**FILED**

June 25, 2012

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004305693

1  **68**
**Anh V. Nguyen # 258749**
2  **Law Office of Anh V. Nguyen**
**PO Box 1986**
3  **Elk Grove, CA 95759**
avan@avanlawoffice.com
4  Telephone: (916) 896-7292   Facsimile:   (877) 896-3302

5  Attorney for J. Pedro Zarate

6  UNITED STATES BANKRUPTCY COURT,
EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

7

8  In re                                              )        Case No. 12-26252-13
                                                      )
9        J. PEDRO ZARATE,                             )        D.C. No.:
                                                      )
10                                                    )        Chapter 13 (Voluntary)
              Debtor.                                 )
11                                                    )        Adv. Pro. No: 12-02166
   _____)
12  J. PEDRO ZARATE,                                  )        FIRST AMENDED
                                                      )        ADVERSARY PROCEEDING
13              Plaintiff,                             )        COMPLAINT
                                                      )
14                                                    )
         vs.                                          )
15                                                    )
   COUNTRYWIDE BANK, N.A., BANK OF                    )
16  AMERICA, N.A. as successor-in-interest to         )
   COUNTRYWIDE BANK, N.A., COUNTRY-                   )
17  WIDE HOME LOANS SERVICING, LP.,                   )
   MORTGAGE ELECTRONIC REGISTRATION                  )
18  SYSTEMS, INC., AMERICAN MUTUAL                    )        DEMAND FOR JURY TRIAL
   FINANCIAL SERVICES., RECONTRUST                   )
19  COMPANY, N.A.,   BANK OF NEW YORK                 )
   MELLON fka THE BANK OF NEW YORK,  AS              )
20  TRUSTEE FOR THE CERTIFICATE  HOLDERS             )
    OF THE CWALT, INC. ALTERNATIVE LOAN             )
21   TRUST 2006-OA10  MORTGAGE                        )
     PASS-TROUGH CERTIFICATES,  SERIES              )
22  2006-OA10.,  and  DOES 1through 100,  inclusive, )
                                                      )
23                                                    )
              Defendants.                             )
24  _____)

25

26                              **COMPLAINT**

27        1.      Plaintiff, J. Pedro Zarate ("Plaintiff"), hereby sets forth the following as its

28  Complaint against the above-named defendants as follows:

-1-

2.    This is an action brought by the Debtor/Plaintiff ("Plaintiff") for a Declaratory Judgment, injunctive and equitable relief as provided for by Rules 3007, 7001(1). 7001(2), 7001(7), and 7001(9) of the Federal Rules of Bankruptcy Procedure ("Rules of Bankruptcy Procedure").

3.    This is also an action to determine the secured status of the defendants herein pursuant to Sections 105(a), 502(b)(1), 506 and 544(a) of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules.

4.    The Plaintiff is also seeking the recovery of actual and punitive damages from the Defendants pursuant to Sections 105(a) of Title 11 of the United States Code commonly referred to as the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

## I. JURISDICTION AND VENUE

5.    This Court has jurisdiction over the adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(F)

6.    Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409(a).

7.    This is a "core" proceeding pursuant to 28 U.S.C. §157(b).

8.    This is an adversary proceeding brought under and pursuant to Rule 7001(1) 7001(2), 7001(7), and 7001(9) ) of the Federal Rules of Bankruptcy Procedure and Sections 547 and 550 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

## II. PARTIES

9.    Plaintiff J. Pedro Zarate is an individual and debtor of the within a voluntary petition for relief on March 30, 2011, under Chapter 13 of the Bankruptcy Code (the "Bankruptcy

Case") in the Eastern District of California, Case No.12-26252-13

10.     Defendants, and each of them, regularly engage in business in the State of California and regularly provide and/or implement mortgage loans and related services to residents in the State of California and the County of Sacramento.

11.     Plaintiff bring this action against defendants for damages and harm resulting from defendants' negligent, fraudulent, and unlawful conduct concerning a residential mortgage loan transactions with plaintiff. The residential mortgage concerned property ("Property) commonly known as 10826 Walmort Road, City of Wilton, County of Sacramento, California, is more particularly described as:

> All that certain real property situate in the Unincorporated Area County of Sacramento, State of California, described as follows:
>
> All that portion of Tract No. 91, as described in the partition of the Mokelumnes Rancho in the District Court of the sixth Judicial District of the State of California, in and for the County of Sacramento, entitled "John F. McCauley, plaintiff, vs. Oved Harvey, et al, defendants", described as follows:
>
> The North 20.00 feet acres of the West 50.00 acres of the East 80.00 acres of the Northeast one-quarter of Section 14. Township 6 North, Range 6 East. M.D.B. & M.
> APN No. 134-0240-001-0000

12.     Plaintiff J. Pedro Zarate is, and at all times relevant to this complaint was, an individual who reside in Sacramento County. Plaintiff refinanced the Property on February14, 2006 ("Closing Date").

13.     Plaintiff is informed and believe and on that basis allege that defendant Countrywide Bank, N.A.("Countrywide Bank") is, and at all times relevant to this complaint was, a diversified financial marketing and/or services corporation engaged primarily in residential banking and/or related businesses. Plaintiff is further informed and believe and on that basis allege

that Countrywide Bank has merged with defendant Bank of America ("B of A") which has succeeded to all of Countrywide's rights and obligations regarding the loan and deed of trust that is at issue in these proceedings. Countrywide Bank was the defendant who allegedly loaned the money to Plaintiff Zarate for the refinance of the Property reserving to itself a Deed of Trust to secure repayment of the loan. Plaintiff is further informed and believe that on the date the note and deed of trust were executed, this defendant attempted to assigned its rights and obligations found in the Deed of Trust to defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as its alleged "nominee" who then, initially, retained Countrywide Bank to service the loan.

14.    Plaintiff is informed and believe and on that basis allege that defendant Bank of America, N.A. ("B of A") is, and at all times relevant to this complaint was, a diversified financial marketing and/or services corporation engaged in residential banking and/or related businesses. Plaintiff is further informed and believe and on that basis allege that defendant Bank of America N.A. ("B of A") is a successor to defendant Countrywide Bank., On July 1, 2008, Countrywide Financial Corporation completed a merger with Red Oak Merger Corporation ("Red Oak"), a wholly owned subsidiary of B of A that was created for the sole purpose of facilitating the acquisition of Countrywide, pursuant to an Agreement and Plan of Merger, dated as of January 11, 2008, by and among Bank of America, Red Oak, and Countrywide Financial Corporation. The acquisition was an all-stock transaction. B of A has assumed Countrywide and its subsidiaries' liabilities, having paid to resolve other litigation arising from misconduct such as predatory lending allegedly committed by Countrywide. At the time of Bank of America's purchase of Countrywide, a Bank of America spokesperson publicly stated: "We bought the company and all of its assets and liabilities . . . . We are aware of the claims and potential claims against the company and have

factored these into the purchase."  Bank of America is a successor-in-interest to the Countrywide and is thus vicariously liable for the conduct of the Countrywide as alleged herein.  which means B of A has already factored expected  litigation and futures  loses with affected borrowers of Countrywide.

15.    Plaintiff is informed and believe and on that basis allege that Countrywide Home Loans Servicing, LP ("Countrywide Loans") is, and at all times relevant to this complaint was, a diversified financial marketing and/or services limited partnership engaged primarily in residential mortgage banking and/or related businesses. When the refinance loan at issue herein was assigned as one of the mortgage loans that made up the Alternative Loan Trust 2006-OA10 Mortgage Pass-through Certificates, Series 2006-OA10, a trust ("the Trust"), this defendant was named the "Master Servicer" of the Trust.

16.    Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a private Delaware corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interest and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the member's interest to MERS. MERS is listed as the grantee in the official records maintained at the county recorder's office. The lender(s) retains the promissory notes, as well as the servicing rights to the mortgages. The lender can then sell its interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating  MERS members. It was this defendant who became defendant Countrywide's  "nominee" and nominated assignee/beneficiary named in the

deed of trust at issue herein. It was this defendant who falsely claimed it was the beneficiary under the deed of trust and unlawfully and wrongfully through the 'power' of the deed of trust caused the foreclosure proceedings to be initiated. On the date of signing the closing documents, February 14, 2006, and upon signing the Deed of Trust, Countrywide Bank attempted to assigned its rights and obligations found in the Deed of Trust to defendant MERS as its alleged "nominee". Plaintiff is informed and believe and on that basis allege that MERS is not a party to and expressly has no beneficial interest in the Note, thereby severing the beneficial interest under the Note and Deed of Trust.

17.    Plaintiff is informed and believe and on that basis allege that defendant American Mutual Financial Services ("American Mutual") is, and at all times relevant to this complaint was, a real estate brokerage corporation organized, existing, licensed and authorized to do business under the laws of the State of California. It is this defendant who brokered the refinance loan and unlawfully received $17,850.00 from the lender as a 'yield spread premium' kickback for directing the plaintiff into a loan package favoring the lender and not the borrower Plaintiff Zarate.

18.    Plaintiff is informed and believe and on that basis allege that at all times relevant to this complaint, defendant Recontrust Company N.A., successor in interest by merger to Recontrust Company ("ReconTrust") was is a corporation organized and existing and existing in the State of Nevada and authorized to do business under the laws of the State of California. Plaintiff further alleges on information and belief that this defendant was named as the actual trustee under the deed of trust securing the promissory note for the purpose of expediting and conducting a non-judicial foreclosure sale of the Property.

19.    Plaintiff is informed and believe and on that basis allege that defendant the Bank of New York Mellon ("Mellon") fka The Bank of New York, is and was the trustee of the Trust, whereby, and pursuant to the pooling and servicing agreement, plaintiff's mortgage note, along with thousands of other notes, was pooled into the Trust and 'securitized' with the issuance of certificates issued for purchase by investors collateralized by the mortgage loans that made up the Trust.

20.    At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this complaint. Knowing or realizing that other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts. Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

21.    Plaintiff do not know the true names or capacities of defendants sued in this complaint as Does 1 through 100, inclusive, and who are sued by such fictitious names. Plaintiff will amend this complaint to allege said names and capacities when the information has been ascertained. Plaintiff is informed and believe and on that basis allege that each of the fictitiously named defendants is legally responsible in some manner for the acts or omissions alleged and the injuries and damages claimed in this complaint, or who in some manner claim an ownership, security, or other interest in the Property.

22.    Plaintiff is informed and believe and on that basis allege that at all times relevant to this complaint, unless otherwise stated, each defendant, including those fictitiously

named, was the agent, servant, employee, partner and/or joint venturer of each remaining defendant, and was acting within the course and scope of such agency, employment, partnership and/or joint venture with the permission and consent or ratification of each remaining defendant, in doing the things alleged in this complaint.

### III. GENERAL ALLEGATIONS

23.    This action arises out of loan related activities on the Property of which the plaintiff is the rightful owner. The plaintiff became lured and ensnared in a predatory refinance loan of the kind addressed by the California Legislature when it enacted emergency anti-predatory lending law to halt the economic down spiral caused by an influx of "preventable foreclosures".

24.    Plaintiff is informed and believe and on that basis allege that beginning in 1998, lenders, their agents, employees, and related servicers, including the defendants herein, developed a scheme to rapidly infuse capital into the home mortgage lending system by selling mortgages in the secondary market, normally three to five times, to create a bankruptcy remote transaction. The lenders, their agents, employees, and related servicers, including defendants herein, then pooled these mortgages into large trusts, securitizing the pool and selling these securities on Wall Street as mortgage backed securities, bonds, derivatives and insurances, often for twenty to thirty times the original mortgage. This deceptive scheme had one primary goal – to supply the secondary market with as many loans as possible, ideally loans that would earn the highest premiums.

25.    In the typical securitization transaction involving mortgage-backed securities, loans were "pooled" together and transferred to a trust controlled by the securitizer. The trust then created and sold securities backed by the loans in the pool. Holders of the securities received the right to a portion of the monthly payment stream from the pooled loans, although they were not

typically entitled to the entire payment stream. Rather, the holders received some portion of the monthly payments. The securitizer or the trust it controlled often retained an interest in any remaining payment streams not sold to security holders. These securitizations could involve the pooling of hundreds or thousands of loans, and the sale of many thousands of shares.

26.    The price paid by purchasers of securities or pools of whole loans varied based on the demand for the particular types of loans included in the securitization or sale of whole loans. The characteristics of the loans, such as whether the loans are prime or subprime, whether the loans had an adjustable or fixed interest rate, or whether the loans include a prepayment penalty, all influenced the price. (Please see Paragraphs 33 through 38, below.)

27.    Various types of loans and loan terms earned greater prices, or "premiums," in the secondary market. For example, investors in mortgages and mortgage backed securities have been willing to pay higher premiums for loans with prepayment penalties. Because the prepayment penalty deters borrowers from refinancing early in the life of the loan, it essentially ensures that the income stream from the loan will continue while the prepayment penalty is in effect. Lenders, typically sought to market loans that earned it higher premiums, including loans with prepayment penalties.

28.    Defendant lenders generally originated as many loans as possible not only to maximize its profits on the secondary market, but to earn greater profits from servicing the mortgages it sold. Lenders often retained the right to service the loans it securitized and sold as pools of whole loans. The terms of the securitizations and sales agreements for pools of whole loans authorized lenders to charge the purchasers a monthly fee for servicing the loans, typically a percentage of the payment stream on the loan.

29.     Driven by the push for a greater market share, lenders did whatever it took to sell more loans, faster – including by easing its underwriting criteria and disregarding the minimal underwriting criteria it claimed to require. **By easing and disregarding its underwriting criteria, lenders also admitted the fraudulent increased in property values promoted by this actions, and all together lenders increased the risk that borrowers would lose their homes. And hundreds of lawsuits are been demanding from this lenders damages for this fraudulent committed actions. The SEC (Securities and Exchange Commission) reports that Countrywide was deliberately misleading investors about significant credit risk, and SEC had to enforce actions addressing misconduct that led or arose to Financial Crises by penalizing countrywide misconduct actions for millions of dollars settlement in penalties,** And SEC has a list of lenders and keeps on punishing this Lenders for misconduct. One of SEC sites is, http://www.sec.gov/spotlight/enf-actions-fc.shtml

30.     Traditionally, lenders and brokers enticed the consumer through advertising the idea of consumer property loan products by use of mail, radio advertising, or in local newspapers, even though the consumer was not in the need of a loan. If the consumer was persuaded to take out a loan, the lender, under normal circumstances would require a borrower accepting the mortgage loan to document his or her income(s), for example, by providing W-2s or tax returns, as well as their assets. In the instant case the lender disregarded such documentation requirements with respect to its riskiest loan products and introduced a variety of reduced or no documentation loan programs to these plaintiff that eased and quickened the loan origination process. The adjustable rate mortgage (ARM) requirements were reduced or no documentation loan was given to plaintiff Zarate.

31.    In this case, the plaintiff Zarate's, income was inflated and assets were stated but not verified. Employment was verbally confirmed and income was supposed to be roughly consistent with incomes earned in the type of job in which the borrower was employed. Reduced documentation loans, in turn, allowed these borrowers to document their incomes through the provision of information that was less reliable then the information required of documentation loans, such as bank statements or verbal verification of employment.

32.    With the assistance of the lender, it became standard practice for loan processors and underwriters to check www.salary.com to see if a stated income was within a reasonable range, with more tolerance on the upside for California salaries. Because loan officers knew about this practice, they too would look at salary.com to figure out the parameters ahead of time and know by how much they could overstate (or fabricate) income.

33.    Loans based on stated income also encouraged the overstating of income – loan brokers and officers either overstated the borrower's income without his or her knowledge. It became standard practice for loan processors and underwriters to check www.salary.com to see if a stated income was within a reasonable range, with more tolerance on the upside for California salaries. Because loan officers knew about this practice, they too would look at salary.com to figure out the parameters ahead of time and know by how much they could overstate (or fabricate) income. **In the instant case, a representative of the lender, defendant Countrywide Bank, and loan broker, defendant American Mutual, without plaintiff Zarate's knowledge, falsely indicated on the loan application that the plaintiff Zarate's monthly income was $18,000.00 per month even though Plaintiff Zarate stated to this representative filling in the form that his actual income was only $5,400.00.**

34.     Further, in California, a mortgage broker owes his or her client a fiduciary duty. A mortgage broker is customarily retained by a borrower to act as the borrower's agent in negotiating an acceptable loan. All persons engaged in this business in California are required to obtain real estate licenses and to comply with statutory requirements. Among other things, the mortgage broker has an obligation to make a full and accurate disclosure of the terms of a loan to borrowers, particularly those that might affect the borrower's decision, and to act always in the utmost good faith toward the borrower and to refrain from obtaining any advantage over the borrower. **In this case the refinance ARM loan was brokered by defendant American Mutual.**

35.     Lenders typically paid brokers compensation in the form of yield spread premiums or rebates to induce brokers to place borrowers in loans that would earn the lender the greatest profit on the secondary market, regardless of whether the loans were in the best interest of, or appropriate for, the borrowers. In fact, the mortgages that earned lenders the highest profit, earned the brokers the highest rebates or yield spread premiums. The broker earned up to six points (i.e., six percent of the amount of the loan), whether in origination fees, rebates, or yield spread premiums. This high level of compensation was well in excess of the industry norm and encouraged brokers to sell the loans without regard to whether the loans were in their clients' best interest.

36.     Borrowers generally did not realize that their loans contained terms that were unfavorable to them and provided greater compensation to their brokers specifically as payment for those unfavorable terms. An origination fee or other charges imposed by a broker are either paid by the borrower or financed as part of the loan. In contrast, rebates and yield spread

premiums are not part of the principal of the loan and instead are paid separately by the lender to the broker. Final Settlement Statements provided to the borrower at close of escrow might indicate, at most, that a yield spread premium or rebate was paid outside of closing (often delineated as "p.o.c." or "ysp poc"), with no indication that the payment constituted compensation from the lender to the broker for placing the borrower in a loan with terms that were not in the borrower's best interest, such as a higher interest rate or lengthier prepayment penalty. **In this case defendant lender, Countrywide Bank, paid a kickback 'yield spread premium' fee in the amount of $17,850.00 to defendant broker, American Mutual, for directing and steering plaintiff Zarate into the loan that was in the best financial interest of defendant Countrywide Bank and not in the financial interest of plaintiff Zarate.**

## IV. SPECIFIC FACTS

37.     On or about January 2006, being profit-motivated, defendant bank Countrywide and defendant real estate broker American Mutual, wished to issue as many loans as possible. This was because of the huge profits to be realized by the bank from the sale of the issued loan(s) in the secondary banking market, and profits to be realized by the real estate broker in the form of kickback fees from the bank. Plaintiff Zarate is informed and believes and thereon alleges that in this refinance transaction, Countrywide had assigned to defendant American Mutual to promote the issuance of the real estate loan. It was in this pressurized atmosphere that defendant American Mutual "sold" and convinced plaintiff Zarate to agree to the predatory and draconian $595,000.00 adjustable rate refinance loan (ARM), secured by a first deed of trust. And, as alleged and described below, it was in this fast and loose atmosphere of quick and easy money that the illegal and fraudulent acts were committed against plaintiff Zarate.

-13-

38.     During the loan transactions, as herein described, the loan broker American Mutual's employee and plaintiff Zarate maintained close communications, and a legal fiduciary relationship existed between the plaintiff Zarate and American Mutual through its agent. It was the agent who filled out the application for the loan and who, without plaintiff Zarate's knowledge, fraudulently indicated on the loan an inflated income amount. When asked by American Mutual's agent what plaintiff Zarate's income was, instead of writing in the application the true amount of $5,400.00, as disclosed by the plaintiff Zarate, the agent wrote in the inflated false amount of $18,000.00, in an apparent attempt to qualify plaintiff Zarate for the loan. At the time of closing of escrow, the loan documents, including the Fannie Mae 1003 Application, were laid in a stack before plaintiff Zarate for signature. Plaintiff Zarate did not read the documents and depended on American Mutual or any of its employees to disclose any information not already discussed.  Nothing was disclosed. As far as plaintiff Zarate could determine, everything seemed in order. The documents were signed, the money was transferred, the escrow closed,  and plaintiff took possession of the property.

39.     Eventually, defendant MERS, who, at that time, was defendant Countrywide's "nominee" and purported "beneficiary" under the deed of trust, attempted to cause a Notice of Default to be filed with the Sacramento County Recorder's Office and served on plaintiff Zarate Much later, MERS "assigned" its alleged "beneficial interest", if any it had,  in the Deed of Trust to a purchaser in the secondary banking market as part of the securitization process and was further assigned and sold to other parties also involved in the securitization process. The assignment trail eventually  ended with the Note and Deed of Trust becoming one of thousands of Notes and Deeds of Trust in the pooling trust (the Trust)  for which defendant Mellon is the Trustee. Defendant Mellon , under the last purported "assignment" has filed the Notice of Sale with the Sacramento County Recorder's Office and had it served on plaintiff Zarate.

40.     Plaintiff s are informed and believe that the Notice of Default and the Notice of

Sale foreclosure should be declared null and void or voidable as the procedural requirements of California Civil Code Section 2924, *et seq.*, were violated.

41.     Defendant MERS had no standing to initiate the foreclosure proceeding, and it was not a party in interest with the power and right to initiate the foreclosure proceedings with the filing of the Notice of Default and its serving on plaintiff Zarate. Further, because it was not a party in interest with standing any such "assignment" as the beneficiary to the Deed of Trust to a third party is also null and void without effect.

42.     Defendant MERS purports to be a registry such as the Department of Motor Vehicles. MERS allegedly assigns mortgages MIN numbers (mortgage identification numbers), just as the DMV keeps track of VIN numbers (vehicle identification numbers). Neither MERS nor the DMV own the mortgages nor the vehicles and neither have any beneficial interests in these mortgages or vehicles, as was stated by R.K. Arnold, President and CEO of MERSCORP, Inc. on November 16, 2010 before the Senate Committee on Banking, Housing and Urban Affairs.

43.     There has been no cognizable chain of title assignments to the DOT for the Wilton property recorded in the Sacramento County Recorder's Office.

44.     A longstanding and unchanged bedrock principle in American jurisprudence holds that a mortgagee has no rights under the mortgage unless it legally attaches to the Promissory Note for which it acts as a security instrument. Carpenter v. Longan, 83 U.S. 271, 274 (1872) ("the note and mortgage are inseparable..., the assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.") Plaintiff further alleges that to date, every state Supreme Court that has looked into the issue of whether MERS is a mortgagee has concluded that MERS is not a mortgagee or a deed of trust beneficiary and is a stranger to the Pooling and Servicing Agreement .

-15-

## V. THE SECURITIZED TRUST AND POOLING AGREEMENT

45.     The Alternative Loan Trust 2006-OA10 Mortgage Pass-through Certificates, Series 2006-OA10 ("the Trust")  is a common law trust formed on or about June 1, 2006, pursuant to New York law.  The corpus of the Trust purportedly consists of a pool of mortgage loans whose value is approximately two and three  quarter billion dollars ($2,782,512,672,.00 ). As is described in the 'Free Writing Prospectus' filed with the Security Exchange Commission, the Trust is comprised of thousands mortgage loans consisting of 30- and 40-year conventional, adjustable rate, negative amortization mortgage loans secured by first liens on one-to-four family residential properties.  Plaintiff is informed and believe and thereon allege that the Trust has no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment as described in the Free Writing Prospectus.

46.     The Pooling and Servicing Agreement ("PSA") dated June 1, 2006, is a public legal document entered into between certain parties to create the Trust. It is filed with the Securities and Exchange Commission and it serves to create and to limit the powers and duties of the Trust and the Trustee.  The Pooling and Servicing Agreement provides for a double purchase and sale whereby a 'Seller'(Countrywide Home Loans, Inc. was one of four 'Sellers')  sells certain mortgage loans to a 'Depositor' ('CWALT, Inc.') which, in turn, sells the mortgage loans to the Trust (defendant Mellon as Trustee).  The transactions are designed to be "True Sales" to comply with Internal Revenue Code requirements for a Real Estate Mortgage Investment Conduit, or "REMIC," and to be bankruptcy remote from any claims of the originators of the said loans.  The Pooling and Servicing Agreement (the "PSA") also establishes the terms and conditions for servicing the mortgage-backed notes to be held in the trust pool.

47.     Plaintiff is informed and believe and thereon allege that, generally,  under the terms of said PSA,  all assets of the Trust must be conveyed to the Trust on or before a fixed date of, (the "Cut-Off Date"), or said assets will not be deemed property or assets of the Trust.

-16-

48.     Under Section 2.01 (Conveyance of Mortgage) of the Pooling and Servicing Agreement, as of the Cut-Off Date of June 1, 2006, the Depositor allegedly conveyed to the Trustee before the Closing date of June 30, 2006 and had a duty to do so, including both with the transfer the assignment of each original Note and of each Deed of Trust.

49.     The Agreement contains a reference to an attached schedule to the PSA, by which each individual mortgage loan in the pool is identified by address and other characteristics, but no such schedule is attached to the document filed with the SEC, and there is no indication in the Pooling and Servicing Agreement of a Deed of Trust against the Wilton  property located in Sacramento County held by the Trust.

50.     The PSA names the following parties that, with the exception of the Master Servicer, supposedly acquired legal ownership and possession of the Promissory Note and Deed of Trust. They include:

A.     The "Originator"– Countrywide Bank, N.A.;

B.     The "Sponsor and Seller" - Countrywide Home Loans, Inc.;

C.     The "Depositor" – CWALT, Inc.

D.     The "Master Servicer" - Countrywide Home Loans Servicing LP; and

E.     The "Trustee" - Bank of New York.

51.     Section 2.01(c) and 2.01(c)(i) (A)of the PSA state:

(b)

"(c) In connection with the transfer and assignment set forth in clause (b) above, the Depositor has delivered or caused to be delivered to the Trustee (or, in the case of the Delay Delivery Mortgage Loans, will deliver or cause to be delivered to the Trustee within thirty (30) days following the Closing Date) for the benefit of the Certificateholders thefollowing documents or instruments with respect to each Mortgage Loan  so assigned:

(i)

(A) the original Mortgage Note endorsed by manual or     facsimile signature in blank in the following form:  "Pay to the order of

-17-

_____ without recourse," with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); . ."

52.    Plaintiff is informed and believe and thereon allege that neither in the aforementioned documents nor in the Sacramento County Recorder's Office does there appear any assignment endorsements or allonges recorded whatsoever by and between the parties/ assignees to the PSA showing a complete chain of endorsement of the Mortgage Note. There has been no cognizable chain of title assignments to the Deed of Trust for the Wilton property recorded in the Sacramento County Recorder's Office.

53.    Plaintiff allege that no defendant in the herein adversary proceeding has or had either constitutional or prudential standing to foreclose on the Wilton property. as there was no executed assignment into the Trust from any named defendant.

54.    Further, Section 3.11 of PSA states that it is the obligation of the Master Servicer to initiate and conduct the foreclosure proceedings, and not the Trustee.

55.    Plaintiff allege that defendant Mellon, the Trustee of the PSA in the herein has or had neither constitutional or prudential standing to foreclose on the Wilton property.

56.    The following claims for relief are asserted against the defendants herein without prejudice to any rights the plaintiff may have, or which this Court may grant to the plaintiff, to assert additional causes of action or allegations based on facts disclosed in documents or other information made available to the plaintiff in the future or developed as a result of discovery or otherwise.

### FIRST CLAIM FOR RELIEF
### (Fraud As to Defendant American Mutual, Defendant Countrywide Bank, and Defendant B of A)

57.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 56 as though

fully set forth herein.

58.     On or about end of 2005, and beginning of 2006, the plaintiff was offered to obtain refinancing on this subject property , by an agent of Countrywide and American Mutual Sukhdev Tumber  In order to refinance the Property and  Secured by a first deed of trust, the loan was obtained from defendant Countrywide Bank. To determine whether the plaintiff could qualify for this loan, the defendant broker was required to fill out and complete a Fannie Mae Form 1003 application form entitled "Uniform Residential Loan Application" disclosing the plaintiff's assets, income, and expenses. In filling out this form, the application instructs that the form should be completed  with the help of the lender, and because defendant American Mutual helped fill out this application, it was acting as an agent of defendant Countrywide. An agent, and employee of defendant American Mutual, Sukhdev Tumber, interviewed the defendant and completed the application. Plaintiff is informed and believes and thereon alleges that American Mutual, in concert with Countrywide Bank, was instructed and directed by Countrywide Bank to help the plaintiff complete the form and thereby acted as an agent of Countrywide Bank within the course and scope of such agency.

59.     Plaintiff is informed and believes, and, upon such information and belief, alleges that defendant American Mutual, while acting as plaintiff's fiduciary mortgage broker, also acted as the agent and fiduciary of defendant Countrywide Bank. This belief is based on two (2) considerations: (1) the 1003 Fannie Mae Form 1003 loan application states that the application is to be filled out with the aid of the lender, and it was an employee of defendant Power who actually filled out the form, and (2) plaintiff is informed and believes that  in addition to the broker fee earned by American Mutual and paid from the loan funds, Countrywide Bank paid a 'yield spread premium' to American Mutual as a kick back reward fee for 'steering' the plaintiff into a more expensive loan, a loan with terms that more favored the lender's interests rather than the borrower's interests. This fee was paid from funds outside of the loan.

60.     The plaintiff truthfully answered the questions including the question(s) that

-19-

required the defendant to disclose his monthly income. The plaintiff disclosed to the agent that his gross income for 2005 was approximately $65,000.00 or about $5,400.00 per month.

61.     Plaintiff is informed and believes and thereon alleges that his gross income would not qualify him to obtain the loan required for the refinance of the Property. Plaintiff is further informed and believes that the agent knew this. Nevertheless, instead of inscribing $5,400.00 as the plaintiff's income, the application states that the plaintiff's monthly income was $18,000.00, thus qualifying the plaintiff for the loan necessary for the refinance of the Property. This representative further represented to the plaintiff that he could afford the loan, and his income would qualify him for the loan.

62.     These representations made by the agent and employee of the loan broker, defendant American Mutual, that the plaintiff's stated income was $18,000.00, that the plaintiff could afford the loan, and that his income would qualify him for the loan were in fact false. The true fact was that at all times relevant to this complaint, plaintiff's maximum monthly incomes did not exceed about $5,400.00 which did not qualify the plaintiff for the loan of $595,000.00. Further, even if the loan had been granted based on plaintiff's actual income, the plaintiff, nevertheless, could not afford the loan.

63.     Therefore defendant lender Countrywide Bank pursuant to the doctrine of *respondeat superior,* was liable for the fraudulent statements made by the employee of defendant mortgage broker, American Mutual.

64.     When these defendants, through defendant American Mutual's employee made these representations, they knew them to be false, and these representations were made with the intent to defraud and deceive plaintiff and with the intent to induce plaintiff to take out the loan that, if the truth were known, he could not afford.

65.     In reliance on the representations of the employee of American Mutual, the plaintiff entered into the loan agreement for the refinance of the Property with the belief that he could afford the loan and that his income would qualify him for the loan.

66.     As a result of this defendant's fraud, plai ntiff has been required to incur damages including, but not limited to, diminution of the Property's value, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

67.     As a further proximate result of defendant's, fraud as herein above alleged, plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

68.     As shown in the facts pleaded hereinabove, this defendant's conduct was intended to cause injury to plaintiff or was despicable conduct carried on by this defendant resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. Defendant American Mutual's acts were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff; conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of his rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

## SECOND CLAIM FOR RELIEF
### (Fraud as to Defendant Countrywide, Defendant B of A, Defendant MERS, and Defendant American Mutual)

69.     Plaintiff Zarate incorporates by reference Paragraphs 1 through 68 as though fully set forth herein.

70.     On or about February 14, 2006, the date of closing of escrow, these named defendants falsely and fraudulently with malicious intent to defraud and deceive plaintiff failed to disclose the following material facts:

1.     The material fact that the loan was issued by the lender with the foreknowledge and understanding that because the lender's credit status

-21-

was not reasonably sufficient to support the loan, it was probable that in the future the loan would be foreclosed upon;

2. The material fact that the separation of the Deed of Trust from the Promissory Note by retention of the Promissory Note by the lender and the separate "assignment" to MERS as the purported "nominee" and "beneficiary"  was an unlawful act with no force and effect;

3. The material fact that any act by defendant MERS as beneficiary to the Deed of Trust in furtherance of a non-judicial foreclosure sale was null and void;

4. The material fact that the monthly payments to be made by the plaintiff and required by the Promissory Note could not be enforced by the alleged "nominee" and "beneficiary", defendant MERS;

5. The material fact that these named defendants in the issuance of the loan acted in coordination with each other in furtherance of a scheme and agreement to issue loans to persons who reasonably did not have appropriate credit and should not have qualified for property loans of which the plaintiff was one;

6. The material fact that the issued Promissory Note would be included as one of thousands of other like Notes as part of a fraudulent PSA Trust securitization for its fraudulent sale on Wall Street to investors

71. Defendant lender Countrywide Bank (and B of A as its successor in interest), pursuant to the doctrine of *respondeat superior,* is liable for the failure of the defendant broker, American Mutual, to disclose the above material facts.

72. Defendant American Mutual's failure to disclose  these material facts, was accomplished with the intent to defraud the plaintiff .

73. Plaintiff was not aware and had no knowledge of the material facts not disclosed.

-22-

In reliance on the representations, the forthrightness, and the truthfulness of American Mutual, plaintiff's fiduciary in this transaction, the plaintiff entered into the loan agreement for the refinance of the Property with the belief that he could afford the loan, that his income would qualify him for the loan, and he further entered this agreement without knowledge of the existence of the above-listed facts.

74.   As a result of these defendant's fraudulent failure to disclose the above-listed material facts, plaintiff has been required to incur damages including, but not limited to, diminution of the Property's value, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

75.   As a further proximate result of defendant's violation and breach of its general duties and obligations owed to plaintiff and the consequences proximately caused by the defendants' failure to disclose material facts, as herein above alleged, plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

76.   As shown in the facts pleaded hereinabove, this defendant's conduct was intended to cause injury to plaintiff or was despicable conduct carried on by this defendant resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. Defendant American Mutual's acts were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff; conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of his rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

-23-

### THIRD CLAIM FOR RELIEF
#### (Breach of Fiduciary Duty as to Defendant American
#### Mutual, Defendant Countrywide Bank, and Defendant B of A)

77.     Plaintiff Zarate incorporates by reference Paragraphs 1 through 76 as though fully set forth herein.

78.     Plaintiff retained defendant American Mutual to act as the mortgage broker. Upon American Mutual's retention as a mortgage broker, a fiduciary relationship was created between American Mutual and plaintiff . As plaintiff's fiduciary, defendant American Mutual owed plaintiff the fiduciary duties of loyalty, diligence, trust, confidence, disclosure, and due care with the affirmative duty to refrain from self-dealing and to act in the best interest of the plaintiff against all other competing interests.

79.     Plaintiff is informed and believes, and upon such information and belief and in doing the things described herein, alleges that defendant American Mutual, while acting as plaintiff's fiduciary mortgage broker, also acted as the agent of defendant Countrywide Bank. This belief is based on two (2) considerations: (1) the 1003 Fannie Mae Form 1003 loan application states that the application for the refinance loan is to be filled out with the aid of the lender, and it was an employee of defendant American Mutual who actually filled out the form, and (2) upon information and belief, in addition to the broker fee earned by American Mutual and paid by the loan funds, Countrywide Bank separately paid $ 17.850.00 as 'yield spread premium' to American Mutual as a kick back reward fee for 'steering' the plaintiff into a more expensive loan, a loan with terms that more favored the lender's interests rather than the borrowers' interests. Acting as the principal to the defendant American Mutual, the agent, defendant Countrywide Bank is vicariously charged with the liability imposed on American Mutual because, as described below, American Mutual's acts in breach of its fiduciary duties owed plaintiff were conducted within the course and scope of the agency relationship then existing between defendant American Mutual and defendant Countrywide Bank.

80.     As described in plaintiff's First Claim for Relief, above, defendant American

Mutual breached the fiduciary obligation owed plaintiff when its agent: (1) falsely and fraudulently stated on the loan application that plaintiff's income was $18,000.00 when the truthful income amount was only $5,400.00, and (2) fraudulently expressed to the plaintiff that he could afford the refinance loan and that his actual income qualified him for the loan.

81.    As a result of the defendant's American Mutual's breach of the fiduciary duties owed to plaintiff,  as herein described, plaintiff has been required to incur actual damages including, but not limited to, diminution of the Property's value, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

82    As a further proximate result of the defendant's American Mutual's breach of its fiduciary duties owed to plaintiff  as herein described, , as herein above alleged, plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

83    As shown in the facts pleaded hereinabove, American Mutual's conduct was intended to cause injury to plaintiff or was despicable conduct carried on by this defendant resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. Defendant American Mutual's acts were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff; conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of his rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

-25-

## FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty as to Defendant American
### Mutual, Defendant Countrywide, and Defendant B of A)\

84.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 83 as though fully set forth herein.

85.    Plaintiff retained defendant American Mutual to act as the mortgage broker. Upon American Mutual's retention as a mortgage broker, a fiduciary relationship was created between American Mutual and plaintiff whereby as plaintiff's fiduciary, defendant American Mutual owed plaintiff the fiduciary duties of loyalty, diligence, trust, confidence, and due care with the affirmative duty to refrain from self-dealing and to act in the best interest of the plaintiff against all other competing interests.

86.    Plaintiff is informed and believes, and upon such information and belief, and in doing the things described herein, alleges that defendant American Mutual, while acting as plaintiff's fiduciary mortgage broker, also acted as the agent of defendant Countrywide Bank. This belief is based on two (2) considerations: (1) the 1003 Fannie Mae Form 1003 loan application states that the application for the purchase money loan is to be filled out with the aid of the lender, and it an employee of defendant American Mutual who actually filled out the form, and (2) in addition to the broker fee earned by American Mutual and paid by the loan funds, Countrywide Bank separately paid a 'yield spread premium' of  $17,850.00 to American Mutual as a kick back reward fee for 'steering' the plaintiff into a more expensive loan, a loan with terms that more favored the lender's interests rather than the borrower's interests. Acting as the principal to the defendant American Mutual, the agent, defendant Countrywide Bank, is vicariously charged with the liability imposed on American Mutual because, as described below, American Mutual's acts in breach of its fiduciary duties owed plaintiff were conducted within the course and scope of the agency relationship then existing between defendant American Mutual and defendant Countrywide Bank.

87.    Defendant American Mutual breached the fiduciary duties owed to plaintiff

-26-

when in its capacity as plaintiff's mortgage broker, it steered, counseled, and directed plaintiff to accept the $595,000.00 loan product from defendant Countrywide Bank that was more costly and expensive to the plaintiff than other loan products that were available to them. But because this loan product was in defendant American Mutual's financial interests, as well as defendant Countrywide Bank's financial interests, defendant Countrywide Bank paid to defendant American Mutual a 'yield spread premium' kickback fee of $17,850.00 as a reward for defendant American Mutual's efforts at steering plaintiff into the more expensive loan. These actions in steering the plaintiff into the more expensive loan and the receipt of the $17,850.00 were in violation of the fiduciary duties of loyalty, diligence, trust, confidence, and due care owed to plaintiff, and each of them, and, in particular, the affirmative duty to refrain from self-dealing and to act in the best interest of the plaintiff against all other competing interests including its own.

88.    Eventually, as a result of the of the actions of defendant American Mutual, as described in this Claim for Relief, the more expensive purchase money loan was issued which later led the beneficiary of the Deed of Trust securing the Promissory Note to initiate non-judicial foreclosure proceedings.

89.    As a result of the defendant's American Mutual's breach of the fiduciary duties owed to plaintiff,  as herein described, plaintiff has been required to incur actual damages including, but not limited to, diminution of the Property's value, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

90    As a further proximate result of the defendant's American Mutual's breach of its fiduciary duties owed to plaintiff  as herein described, , as herein above alleged, plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

91.    As shown in the facts pleaded hereinabove, American Mutual's conduct was

intended to cause injury to plaintiff or was despicable conduct carried on by this defendant resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. Defendant American Mutual's acts were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff; conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of his rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

### FIFTH CLAIM FOR RELIEF
**(Breach of Fiduciary Duty as to Defendant American
Mutual, Defendant Countrywide, and Defendant B of A)**

92.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 91 as though fully set forth herein.

93.    Plaintiff retained defendant American Mutual to act as the mortgage broker. Upon American Mutual's retention as a mortgage broker, a fiduciary relationship was created between American Mutual and plaintiff whereby as plaintiff's fiduciary, defendant American Mutual owed plaintiff the fiduciary duties of loyalty, diligence, trust, confidence, and due care with the affirmative duty to refrain from self-dealing and to act in the best interest of the plaintiff against all other competing interests.

94.    Plaintiff is informed and believes, and upon such information and belief, and in doing the things described herein, alleges that defendant American Mutual, while acting as  plaintiff's fiduciary mortgage broker, also acted as the agent of defendant Countrywide Bank. This belief is based on two (2) considerations: (1) the 1003 Fannie Mae Form 1003 loan application states that the application for the purchase money loan is to be filled out with the aid of the lender, and it an employee of defendant American Mutual who actually filled out the form, and (2) in addition to the broker fee earned by American Mutual and paid by the loan funds, Countrywide Bank separately paid a 'yield spread premium' of $17,850.00 to American

Mutual as a kick back reward fee for 'steering' the plaintiff into a more expensive loan, a loan with terms that more favored the lender's interests rather than the borrower's interests. Acting as the principal to the defendant American Mutual, the agent, defendant Countrywide Bank, is vicariously charged with the liability imposed on American Mutual because, as described below, American Mutual's act in breach of its fiduciary duties owed plaintiff was conducted within the course and scope of the agency relationship then existing between defendant American Mutual and defendant Countrywide Bank.

95.    Defendant American Mutual breached the fiduciary duties owed to plaintiff when in its capacity as plaintiff's mortgage broker, failed to disclose the material facts described in plaintiff's Second Claim for Relief that were within its knowledge and steered, counseled, and directed plaintiff to accept the $595,000.00  loan product. This action of steering the plaintiff into the loan without disclosure of the above-described material facts within its knowledge was in violation of the fiduciary duties of loyalty, diligence, trust, confidence, disclosure, and due care owed to plaintiff, and, in particular, the affirmative duty to refrain from self-dealing and to act in the best interest of the plaintiff against all other competing interests including its own.

96.    Eventually, as a result of the of the actions of defendant American Mutual, as described in this Claim for Relief, the refinance loan was issued which eventually has led to the initiation of non-judicial foreclosure proceedings.

97.    As a result of the defendant's American Mutual's breach of the fiduciary duties owed to plaintiff,  as herein described, plaintiff has been required to incur actual damages including, but not limited to, diminution of the Property's value, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

98.    As a further proximate result of the defendant's American Mutual's breach of its fiduciary duties owed to plaintiff  as herein described, , as herein above alleged, plaintiff has

suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

99.    As shown in the facts pleaded hereinabove, American Mutual's conduct was intended to cause injury to plaintiff or was despicable conduct carried on by this defendant resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. Defendant American Mutual's acts were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff; conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of his rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

### SIXTH CLAIM FOR RELIEF
#### (Civil Conspiracy to Defraud as to All Defendants)

100.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 99 as though fully set forth herein.

101.    Plaintiff alleges that the defendants, and each of them, had a duty to disclose to plaintiff accurate, truthful, and complete information regarding the subject loan transaction.

102.    As described in plaintiff's First Claim for Relief, plaintiff further alleges that defendants American Mutual and Countrywide misrepresented plaintiff's income on the application and then represented to plaintiff that he could afford and qualified for the loan; that he earned sufficient income to repay the loan. Defendants made these representations to plaintiff even though none of them had conducted an investigation to verify plaintiff's income or otherwise determine his suitability for the loan. These defendants made the above-described statements and misrepresentations even though they knew such statements were false. In deciding to enter into the loan agreement with defendants, plaintiff reasonably relied on defendant's employee to fill in the application truthfully and reasonably relied on the false representations that plaintiff was qualified for and could afford the subject loan. As shown

by their actions, each of the defendants knew and impliedly or expressly understood, acknowledged and ratified the actions of each of the other defendants in pursuit of the exceptional profits earned by each defendant from the specious transactions that emanated from the issuance of this loan and millions of like and similar loans. By all this actions this defendants in concert  permitted and  falsely created , and accepted the rapidly and fraudulent increase of this  Property value, to make the property owner believed there was equity in the property to additionally motivate him the sale of  the refinance of the loan. **, and all together this lender increased the risk that plaintiff  borrower would lose this home or property  in the very near future by way of foreclosure** .

103.   The fraudulent acts of these defendants were committed pursuant to and in furtherance of an agreement made between all defendants herein to fraudulently  induce home Borrowers , of which plaintiff was one, to enter into unaffordable home purchase or refinance loans whether said borrowers were qualified for or could afford them. Defendants did these acts motivated by the enormous fraudulent profits to be made by selling like loans in the secondary banking market and pooling these loans into a trust for securitization and sales on the open market as described in the  "GENERAL ALLEGATIONS",  above.

104.   At all times mentioned herein, defendants, and each of them, were acting in concert with each other and ratified and approved the above-described fraudulent conduct by the other defendant.

105.   As a direct and proximate result of these defendants' agreement and conspiracy to commit the fraudulent conduct described herein, plaintiff suffered actual damages including, but not limited to, diminution of the Property's value, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

106.   As a further proximate result of actions of defendants, and each of them, in

-31-

conspiring to defraud plaintiff, as alleged herein, plaintiff  has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

107.    As shown in the facts pleaded hereinabove, the conduct of the defendants, and each of them,  was intended to cause injury to plaintiff or was despicable conduct carried on by these defendants resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. The acts of defendants, and each of them, were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff; conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of his rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

## SEVENTH CLAIM FOR RELIEF
### (Civil Conspiracy to Defraud as to All Defendants)

108.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 107 as though fully set forth herein.

109.    Plaintiff alleges that the defendants, and each of them, had a duty to disclose to plaintiff accurate, truthful, and complete information regarding the subject loan transaction.

110.    As described in plaintiff's Second Claim for Relief, plaintiff further alleges that defendants American Mutual and Countrywide failed to disclose the material facts listed in plaintiff's Second Claim for Relief. These defendants failed to disclose the listed material facts even though they knew the disclosure of the facts existed, and that if they were disclosed to the plaintiff, the disclosures in all probability would have caused him to decline the loan offer made by the defendant Countrywide. As shown by their actions, each of the defendants knew and impliedly or expressly understood, acknowledged and ratified the actions of each of the other defendants in pursuit of the exceptional profits earned by each defendant from the

specious transactions that emanated from the issuance of this loan and millions of like and similar loans.

111.    The fraudulent acts of these defendants were committed pursuant to and in furtherance of an agreement made between all defendants herein to fraudulently induce home borrowers, of which plaintiff was one, to enter into unaffordable home purchase or refinance loans whether said purchaser/borrowers were qualified for or could afford them. Defendants did these acts motivated by the enormous fraudulent profits to be made by selling like loans in the secondary banking market and pooling these loans into a trust for securitization and sales on the open market as described in the "GENERAL ALLEGATIONS", above.

112.    At all times mentioned herein, defendants, and each of them, were acting in concert with each other and ratified and approved the above-described fraudulent conduct by the other defendant. By all this actions this defendants in concert permitted and falsely created , and accepted the rapidly and fraudulent increase of this  Property value, to make the property owner believed there was equity in the property to additionally motivate him the sale of  the refinance of the loan. **, and all together this lender increased the risk that plaintiff  borrower would lose this home or property  in the very near future by way of foreclosure** .

113.    As a direct and proximate result of these defendants' agreement and conspiracy to commit the fraudulent conduct described herein, plaintiff suffered actual damages including, but not limited to, diminution of the Property's value, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

114.    As a further proximate result of actions of defendants, and each of them, in conspiring to defraud plaintiff, as alleged herein, plaintiff  has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

-33-

115.    As shown in the facts pleaded hereinabove, the conduct of the defendants, and each of them,  was intended to cause injury to plaintiff or was despicable conduct carried on by these defendants resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. The acts of defendants, and each of them, were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff; conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of his rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

### EIGHTH CLAIM FOR RELIEF
**(Declaratory and Injunctive Relief re Civil Code Section 2923.5 as to Defendant MERS and Defendant Mellon)**

116.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 115 as though fully set forth herein.

117.    Because defendant MERS in filing and serving the Notice of Default violated the requirements of Civil Code Section 2923.5, the Notice of Default and the Notice of Trustee's Sale are null and void

118.    Plaintiff at all times relevant to this complaint, was the lawful owner in fee of the Property at issue.

119.    Civil Code Section 2923.5 in pertinent part requires:

2923.5(a).

(1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

(2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the

-34-

borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee,    beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default filed pursuant to Section 2924 shall include a declaration from the mortgagee, beneficiary, or authorized agent that it has contacted the borrower, tried with due diligence to contact the borrower as required by this section, or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent.

(c)    . . .

(d)    . . .

(e)    For purposes of this section, a "borrower" shall include a mortgagor or trustor.

120.    Civil Code § 2923.5 is foundational in nature and is a condition precedent to obtaining the power to initiate a non-judicial trustee's foreclosure sale. It places a mandatory duty on the foreclosing party to make contact with the defaulting party at least thirty (30) days prior to the filing and service of the Notice of Default on the plaintiff. The foreclosing party must discuss the borrower's financial situation and explore options for the borrower to avoid foreclosure. It also requires the foreclosing party to provide a toll-free HUD telephone number to the defaulting trustor/borrower. The foreclosing party who has complied with the § 2923.5 contact requirements must then declare under penalty of perjury in the Notice of Default that it has complied. If the foreclosing party made reasonable and diligent good faith efforts to contact the borrowers but was unable to do so, the foreclosing party must by way of declaration incorporated into the Notice of Sale describe in detail and under penalty of perjury its due diligence in its attempt to comply with

the § 2923.5 requirements.

121.   In violation of plaintiff' rights under Civil Code § 2923.5, neither defendant Mellon nor defendant MERS, the alleged parties in interest with purported standing to initiate foreclosure proceedings, made the required contact with plaintiff thirty (30) days prior to the filing and service of  the Notice of Default to discuss the plaintiff' financial situation and explore options for the plaintiff  to avoid foreclosure and provide a toll-free HUD telephone number.

122.   Plaintiff has no remedy at law for the injuries and damages being suffered or that are threatened as plaintiff will be required to institute a multiplicity of suits to regain rightful title, ownership and possession of the real property at issue herein if these defendants are allowed to encumber, sell or otherwise transfer title, possession, or ownership of the real property to another party at the foreclosure sale.

123.   As a result of this violation, defendant Mellon failed to declare in the Notice of Default that it had made the required contact, and further failed to describe by declaration incorporated into the Notice of Sale its good faith efforts to contact the plaintiff in compliance with § 2923.5.

124.   As a further result of these violations of the provisions of Civil Code § 2923.5, the Property is scheduled to be sold at a foreclosure sale.

125.   By reason of these defendants' conduct in violating the provisions and requirements found in Civil Code § 2923.5, Plaintiff is entitled to an equitable decree declaring that the Notice of Default filed and served on the Plaintiff is null and void and further enjoining these defendants, and each of them, from continuing to allege and assert any claim as to an enforceable secured or unsecured claim against property of the estate in bankruptcy.

126.   Plaintiff seeks a judicial declaration from this court .  it is necessary that this Court declare the actual rights and obligations of the parties according to fairness  justice and Law ,  and make a determination as to the validity, nature and extent that  defendants

claimed foreclosure procedures are in violation of 2923.5 and foreclosure documents and procedures are declared null and void by an order of the court..

127.    Further, plaintiff has incurred fees, costs, and expenses to protect his interests in the Property during foreclosure proceedings.

128 . Tender requirement should not be applied in Plaintiff's case because Plaintiff alleges fraud in the origination of the loan in his complaint, any tender requirement would be inequitable for the Plaintiff. Additionally, Plaintiff is demanding $1,790,000.00 in his complaint the potential damages in this case exceeds the amount of the tender requirement. Plaintiff is now indigent mainly because of the actions of Defendants it would be unjust to require Plaintiff to tender. Plaintiff alleges under information and believe that Defendants have already factored in and adjusted for losses and cost to defend future claims in the transaction by acquisition, merging, successor in interest or assigning of Plaintiff's loan, and by additionally receiving government bailouts. To require plaintiff to tender in order to defend his property would be unjust and inequitable considering the fact that defendant banks are to blame for inflated property values which have dropped 50% to 75% since it's peak. Plaintiff request that the Court declare that tender is not required in Plaintiff's situation.

## NINTH CLAIM FOR RELIEF
### (Breach of Contract as to Defendant B of A)

129.    Plaintiff Zarate incorporates by reference Paragraph 1 through 128 as though fully set forth herein.

130.    On or about June, 2009, defendant B of A, on its internet website, falsely and fraudulently represented and offered to Countrywide customers, of which plaintiff was one, that if plaintiff qualified under "Bank of America's National Home Ownership Retention Program for Countrywide Customer's" loan criteria, then as a Countrywide customer, B of A would modify the existing home loan reducing the principal to the appraised value of the home plus 5% .This representation constituted an offer to contract.

131.    Because the plaintiff qualified under the terms of the offer, on or about June, 2009, plaintiff accepted by telephone defendant B of A's offer to modify his loan agreement with

Countrywide Loans and/or Countrywide Bank, and a contract was formed.

132.    Plaintiff performed all conditions, covenant, and promises on plaintiff's part to be performed in accordance with the terms and conditions set forth on "Bank of America's National Home Ownership Retention Program for Countrywide Customers."

133.    Plaintiff is informed and believes, and on that basis alleges, that the beneficiary breached this agreement by failing to modify the original purchase loan to conform to the terms set forth in "Bank of America's National Home Ownership Retention Program for Countrywide Customers" that defendant B of A would reduce the principal of the loan to the appraised value of the Property plus 5%.

134.    Plaintiff reasonably relied on the representations set forth in "Bank of America's National Home Ownership Retention Program for Countrywide Customers" in that plaintiff would not have entered into the agreement had plaintiff known  and understood the true fact that defendant B of A would not perform under the newly formed agreement by executing a modified home loan agreement.

135.    As a consequence of defendant B of A's breach of the agreement, plaintiff has been damaged in that plaintiff now faces foreclosure proceedings and must now expend energy, money, and time to defend his proprietary interest(s) in the Property.

136.    Plaintiff is informed and believes and thereon alleges that he will incur further damages as a result of defendant's B of A breach of contract in an amount according to proof and reserves the right to amend this complaint to allege these further damages when known.

### TENTH CLAIM FOR RELIEF
### (Fraud and Misrepresentation as to Defendant B of A)

137.    Plaintiff Zarate incorporates by reference Paragraph 1 through 136 as though fully set forth herein.

138.    On or about June, 2009, defendant B of A, on its internet website, falsely and fraudulently represented and offered to Countrywide customers, of which plaintiff was one, that if plaintiff qualified under "Bank of America's National Home Ownership Retention  Program

for Countrywide Customers", then as a Countrywide customer, B of A would modify the existing home loan plaintiff had entered in to with Countrywide Loans and/or Countrywide Bank, reducing the principal of the loan to the Property's appraised value plus 5%. This representation constituted an offer to contract.

139. <u>Plaintiff is also informed and believes,  and on that basis alleges, that B of A had no intentions to modified no ones Loan  to Property Value and additionally 5% equity to retain in the property for home owners to keep their home or property as advertised, on line  to the public.</u> .The representations made by the defendant B of A were in fact false. The true facts were that though B of A made the false and fraudulent representations that it would modify the plaintiff's home loan to the appraised value of the Property plus 5%, if the Loan criteria qualified, and though plaintiff Loan  qualified and accepted the offer, B of A, without excuse or justification, then refused to perform under the agreement.

140.    When defendant B of A made these representation, it knew them to be false, and these representation were made by this defendant with the intent to defraud and deceive the plaintiff and with the intent to induce plaintiff to act in the manner herein alleged. At the time defendant made the promise to plaintiff, this defendant had no intention of performing what was promised.

141.    At the time this promise was made and at the time plaintiff took the actions herein alleged, plaintiff was ignorant of this defendant's secret intention not to perform and plaintiff could not, in the exercise of reasonable diligence have discovered defendant's secret intention. In reliance on these representations, plaintiff was induced to and did accept defendant B of A's  offer to modify plaintiff's home loan. Had plaintiff known the true facts, he would not have taken such action. Plaintiff's reliance on defendant's representation was justified because the negative political/economic dynamics existing against banks generally and defendant Countrywide, in particular, would reasonably motivate honest response and behavior by B of A, Countrywide's parent company.

142.    As a direct and proximate result of these defendant's fraud and misrepresentation as described herein, plaintiff suffered actual damages including, but not limited to, diminution of the Property's value, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

143.    As a further proximate result of the fraud and misrepresentation of defendant B of A, as alleged herein, plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

144.    As shown in the facts pleaded hereinabove, the conduct of the defendants, and each of them, was intended to cause injury to plaintiff or was despicable conduct carried on by these defendants resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. The acts of defendant B of A were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff; conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of his rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

### ELEVENTH  CLAIM FOR RELIEF
### (Declaratory and Injunctive Relief as to Defendant Recontrust, Defendant Countrywide Loans, and Defendant Mellon)

145.    Plaintiff incorporates by reference Paragraphs 1 throug h 144 as though fully set forth herein.

146.    The Notice of Default and Notice of Trustee's Sale are null and void, because, Plaintiff is informed and believes, none of these named defendants who may attempt to enforce

the provisions of the Promissory Note or who are now attempting to enforce these provisions by way of the enforcement provision of the Note's Deed of Trust, are in possession of the original Promissory Note as required by the federal Uniform Commercial Code § 3-301. ("UCC")

147.    UCC § 3-301 specifically identifies the persons who are entitled to enforce a security interest by, among other means, instituting a foreclosure sale under a deed of trust. It states in whole:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The statute is exclusive rather than inclusive in nature, and those who are not identified under 3-309 requirements do not have the right to enforce such an interest.

148.    Plaintiff is informed and believes, and thereon alleges that <u>none</u> of the named defendants nor any other entity or person directly participating in the foreclosure proceedings were, and are not now, in possession of the Promissory Note nor were, and are not now, beneficiaries, assignees, or employees of the person or entity in possession of the Note, and, pursuant to UCC § 3-301, were not otherwise entitled to payment. Moreover, plaintiff is informed and believes, and thereon alleges that said defendants are not "person[s] entitled to enforce" the security interest on the Property, as that term is defined in UCC § 3-301.

149.    The instruments or other documents showing a chain of title to the Property has either been lost, stolen, destroyed, fabricated, separated, and/or unlawfully altered or reproduced. Plaintiff is informed and believes that the required documentation of title required to be attached to the PSA is non-existent in violation of the PSA rules Section 2.01(c) 2.01(c)(i) (A)of the PSA and 3.11. This is because no such schedule was attached to the document (PSA) filed with the SEC.

-41-

Further, there is no indication or recording of the Pooling and Servicing Agreement regarding the Property noted in Sacramento County Recorder's Office that would show a complete chain of endorsement of the Mortgage Note. There has been no cognizable chain of title assignments to the Deed of Trust for the Wilton property recorded in the Sacramento County Recorder's Office.

150.    Plaintiff has no remedy at law for the injuries and damages being suffered or that are threatened as plaintiff will be required to institute a multiplicity of suits to regain rightful title, ownership and possession of the real property at issue herein if these defendants are allowed to encumber, sell or otherwise transfer title, possession, or ownership of the real property to another party at the foreclosure sale.

151.    As a direct and proximate result of wrongful actions of said defendants, if said defendants are unable to produce the original Promissory Note and yet still file and serve the Notice of Default, the Notice of Trustee's Sale and then conduct non-judicial foreclosure sale, without maintaining actual possession of the promissory note in violation of the "possession" requirement set forth in UCC § 3-301, the plaintiff will suffer damages, including, but not limited to, loss of possession and ownership of the Property, direct monetary losses, consequential damages, and emotional distress.

152.    As a direct and proximate result of wrongful actions of said defendants, the plaintiff is in imminent danger of losing their possessory and ownership interests in the Property by way of the sale and purchase of the Property at a pending foreclosure sale..

153.    By reason of these defendants' conduct in violating the provisions and requirements found in Commercial Code § 3301, Plaintiff is entitled to an equitable decree declaring that the Notice of Default and the Notice of Trustee's Sale filed and served on the Plaintiff Zarate are null and void and further enjoining these defendants, and each of them, from continuing to allege and assert any claim as to an enforceable secured or unsecured claim against property of the estate in bankruptcy.

154 . Plaintiff seeks a judicial declaration from this court . it is necessary that this Court declare the actual rights and obligations of the parties according to fairness and justice , and make a determination as to the validity, nature and extent that defendants claimed debt has no standing against Plaintiff and foreclosure documents are null and void.

155.    Tender requirement should not be applied in Plaintiff's case because Plaintiff alleges fraud in the origination of the loan in his complaint, any tender requirement would be inequitable for the Plaintiff. Additionally, Plaintiff is demanding $1,790,000.00 in his complaint the potential damages in this case exceeds the amount of the tender requirement. Plaintiff is now indigent mainly because of the actions of Defendants it would be unjust to require Plaintiff to tender. Plaintiff alleges under information and believe that Defendants have already factored in and adjusted for losses and cost to defend future claims in the transaction by acquisition, merging, successor in interest or assigning of Plaintiff's loan, and by additionally receiving government bailouts. To require plaintiff to tender in order to defend his property would be unjust and inequitable considering the fact that defendant banks are to blame for inflated property values which have dropped 50% to 75% since it's peak. Plaintiff request that the Court declare that tender is not required in Plaintiff's situation.

156.    Further, plaintiff have incurred fees, costs, and expenses to protect his interests in the Property during foreclosure proceedings according to proof.

### TWELFTH  CLAIM FOR RELIEF
**(Declaratory and Injunctive Relief as to Defendant Recontrust,**
**Defendant Countrywide Loans, and Defendant Mellon)**

157.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 156 as though fully set forth herein.

158.    The Notice of Default and Notice of Trustee's Sale are null and void,  because, Plaintiff is informed and believe, none of these named defendants who may attempt to enforce the provisions of the Promissory Note or who are now attempting to enforce these provisions by way of the enforcement provision of the Note's Deed of Trust, has no standing to enforce the

-43-

Deed of Trust in that the Promissory Note is an "interest only" payment Note.

159.    Under Uniform Commercial Code § 3-304(c)("UCC"), a borrower is not in default if he has fallen behind on the interest payments but not the payment(s) on the principal. Section 3-304(c) specifically states:

> (c) Unless the due date of principal has been accelerated, an instrument does not become overdue if there is default in payment of interest but no default in payment of principal.

160.    The Promissory Note can be described as a "negative adjustable rate mortgage" and an "instrument" for Section 3-304 purposes, whereby the plaintiff was required to make interest only payments on the refinance loan. Neither the  known true beneficiary, defendant Mellon, of the Deed of Trust, described in the PSA,  MERS the pseudo "nominee" beneficiary, nor the Master Servicer under the PSA, the party authorized by the PSA to foreclose under Section 3.11 of the PSA, have  "accelerated" the payoff of the note, and, pursuant to the requirements of Section 3-304, the payments on the Note were not, and are not now, "overdue", and the Note is not subject to foreclosure proceedings.

161.    Notwithstanding the requirements of UCC § 3304, the defendant MERS has wrongfully begun non-judicial foreclosure proceedings by causing a Notice of Default to be filed with the Sacramento County Recorder's Office and served on the plaintiff Zarate, and defendant Mellon has issued and served the Notice of Trustee's Sale on the plaintiff Zarate.

162.    Plaintiff has no remedy at law for the injuries and damages being suffered or that are threatened as plaintiff will be required to institute a multiplicity of suits to regain rightful title, ownership and possession of the real property at issue herein if these defendants are allowed to encumber, sell or otherwise transfer title, possession, or ownership of the real property to another party at the foreclosure sale.

163.    As a direct and proximate result of these wrongful actions of  defendant MERS and other defendants, including defendant Mellon,  participating in the non-judicial foreclosure proceedings on the Property, at a time when the payments were not overdue on the note and in

-44-

violation of the requirements set forth in UCC § 3-304, the plaintiff will suffer damages, including, but not limited to, loss of possession and ownership of the Property, direct monetary losses, consequential damages, and emotional distress.

164.    As a direct and proximate result of wrongful actions of said defendants, the plaintiff is in imminent danger of losing his possessory and ownership interests in the Property by way of the sale and purchase of the Property at a pending foreclosure sale.

165.    By reason of these defendants' conduct in violating the provisions and requirements found in UCC § 3-304, Plaintiff is entitled to an equitable decree declaring that the Notice of Default and the Notice of Trustee's Sale filed and served on the Plaintiff is null and void and further enjoining these defendants, and each of them, from continuing to allege and assert any claim as to an enforceable secured or unsecured claim against property of the estate in bankruptcy.

167. For such described reasons and 3-304 ( c) described above , Plaintiff declares that his debt is not in default, . Plaintiff seeks a judicial declaration from this court . it is necessary that this Court declare the actual rights and obligations of the parties according to law, and make a determination as to the validity, nature and extent that defendants claimed debt is not in default by this plaintiff and foreclosure documents are null and void.

168.    Tender requirement should not be applied in Plaintiff's case because Plaintiff alleges fraud in the origination of the loan in his complaint, any tender requirement would be inequitable for the Plaintiff. Additionally, Plaintiff is demanding $1,790,000.00 in his complaint the potential damages in this case exceeds the amount of the tender requirement. Plaintiff is now indigent mainly because of the actions of Defendants it would be unjust to require Plaintiff to tender. Plaintiff alleges under information and believe that Defendants have already factored in and adjusted for losses and cost to defend future claims in the transaction by acquisition, merging, successor in interest or assigning of Plaintiff's loan, and by additionally receiving government bailouts. To require plaintiff to tender in order to defend his property would be unjust and inequitable considering the fact that defendant banks are to blame for inflated property values which have

dropped 50% to 75% since it's peak.  Plaintiff request  that the Court declare that tender is not required in Plaintiff's situation.

### THIRTEENTH CLAIM FOR RELIEF
#### (Declaratory and Injunctive Relief as to Defendant
#### Countrywide Loans, Defendant  Recontrust  and Defendant Mellon)

169.    Plaintiff  incorporates by reference Paragraphs 1 through 168 as though fully set forth herein.

170. The Notice of Default and Notice of Trustee's Sale are declared  null and void, because, Plaintiff is informed and believes, none of these named defendants who may attempt to enforce the provisions of the Promissory Note or who are now attempting to enforce these provisions by way of the enforcement provision of the Note's Deed of Trust, has no standing to enforce the Deed of Trust nor are they parties in interest. This is because, (1) defendant MERS was not a true beneficiary under the Deed of Trust, and had no standing to initiate foreclosure proceedings, (2) defendant Mellon, the party purported and alleged in the PSA to be the Trustee of the PSA and signatory to the PSA, agreed when it executed the PSA that the Master Servicer of the PSA, defendant Countrywide Loans, would conduct foreclosure proceedings for those loans covered by the PSA, and (3) upon information and belief, the Promissory Note was sold and assigned by defendant Countrywide Bank to defendant Countrywide Loans without endorsement or allonge, who then sold and assigned to the Promissory Note to defendant Mellon without endorsement or allonge, thereby leaving empty the chain of assignment or ownership to the Promissory Note.

171.    Each of the three reasons cited in Paragraph 165, above, standing alone, is sufficient to show that neither defendant MERS nor defendant Mellon are parties in interest with standing to conduct or participate in the foreclosure proceedings.

172.    Plaintiff has no remedy at law for the injuries and damages being suffered or that are threatened as plaintiff will be required to institute a multiplicity of suits to regain rightful title, ownership and possession of the real property at issue herein if these defendants

-46-

are allowed to encumber, sell or otherwise transfer title, possession, or ownership of the real property to another party at the foreclosure sale.

173.    As a direct and proximate result of the wrongful action of defendant MERS in filing and serving the Notice of Default and the Notice of Trustee's Sale the plaintiff, and each of them, have suffered damages, including, but not limited to, direct monetary losses, consequential damages, and emotional distress.

174.    As a further direct and proximate result of wrongful actions of  said defendants, the plaintiff is in imminent danger of losing his possessory and ownership interests in the Property by way of the sale and purchase of the Property at a pending foreclosure sale.

175.    By reason of these defendants' conduct as described in Paragraph 165, above, whereby (1) defendant MERS was not a true beneficiary under the Deed of Trust, and had no standing to initiate foreclosure proceedings, (2) defendant Mellon, the party purported and alleged in the PSA to be the Trustee of the PSA and signatory to the PSA, agreed when it executed the PSA that the Master Servicer of the PSA, defendant Countrywide Loans, would conduct foreclosure proceedings for those loans covered by the PSA, and (3) upon information and belief, the Promissory Note was sold and assigned by defendant Countrywide Bank to defendant Countrywide Loans without endorsement or allonge, who then sold and assigned to the Promissory Note to defendant Mellon without endorsement or allonge, thereby leaving empty the chain of assignment or ownership to the Promissory Note, Plaintiff is entitled to an equitable decree declaring that the Notice of Default and the Notice of Trustee's Sale filed and served on the Plaintiff is null and void and further enjoining these defendants, and each of them, from continuing to allege and assert any claim as to an enforceable secured or unsecured claim against property of the estate in bankruptcy.

176. Plaintiff seeks a judicial declaration from this court . it is necessary that this Court declare the actual rights and obligations of the parties, according to fairness and justice  and make a determination as to the validity, nature and extent that   defendants claimed purported

beneficiaries MERS and Mellon have no standing or beneficial interest in the property, and their foreclosure executed documents and procedures have no legal effect against Plaintiff and are declared null and void by this court..

177 . Tender requirement should not be applied in Plaintiff's case because Plaintiff alleges fraud in the origination of the loan in his complaint, any tender requirement would be inequitable for the Plaintiff. Additionally, Plaintiff is demanding $1,790,000.00 in his complaint the potential damages in this case exceeds the amount of the tender requirement. Plaintiff is now indigent mainly because of the actions of Defendants it would be unjust to require Plaintiff to tender. Plaintiff alleges under information and believe that Defendants have already factored in and adjusted for losses and cost to defend future claims in the transaction by acquisition, merging, successor in interest or assigning of Plaintiff's loan, and by additionally receiving government bailouts. To require plaintiff to tender in order to defend his property would be unjust and inequitable considering the fact that defendant banks are to blame for inflated property values which have dropped 50% to 75% since it's peak. Plaintiff request that the Court declare that tender is not required in Plaintiff's situation.

## FOURTEENTH CLAIM FOR RELIEF
### (Negligence as to Defendant ReconTrust)

178.    Plaintiff incorporates by reference Paragraphs 1 through 177 as though fully set forth herein.

179.    As trustee on deeds of trust, defendant Recontrust has a general duty to conduct the process leading to and the actual non-judicial foreclosure sale "fairly, openly, reasonably, and with due diligence," exercising sound discretion to protect the rights of the mortgagor.

180.    Plaintiff is informed and believe that defendant Recontrust had an agreement with defendant MERS the alleged "beneficiary" of the deed of trust, and/or its agent, on the Property to the effect that Recontrust would only cancel or continue non-judicial foreclosure sale if the beneficiary approves.

-48-

181.    Defendant Recontrust has committed unfair and deceptive acts and violated its duty owed to  plaintiff  to fairly, openly, and reasonably, and with due diligence  protect the plaintiff' rights as a mortgagor by noticing and conducting the trustee sale by failing to do the following:

      a.    Failing to actually identify the actual owner of the Promissory Note in the Notice of Default;

      b.    Failing to obtain proof that the beneficiary named in the Notice of Default was the owner of the Promissory Note secured by the Deed of Trust;

      c.    By naming MERS in the Deed of Trust as the beneficiary under the Deed of Trust when this defendant knew, or at least should have known, that MERS was never a party to whom the obligation was owed;

      d.    Failing to state the name of the original beneficiary in the Notice of Trustee's Sale in violation of CC § 2924f(b)(1); and

      e.    Failing to identify a defective or unperfected assignment of  Deed of Trust and Substitution of a Trustee.

182.    Unless enjoined by this Court, this defendant will continue to breach its general duty owed to plaintiff and/or aid and abet therein, and may consummate the foreclosure proceedings by conducting the unlawful non-judicial foreclosure sale .

183.    As a result of this defendant's violation of its general duty owed to plaintiff to conduct the proceedings, leading to and the actual non-judicial foreclosure sale, fairly, openly, reasonably, and with due diligence, exercising sound discretion to protect the rights of plaintiff, plaintiff has been required to incur damages including, but not limited to, attorneys' fees, costs, interest and other damages incurred in plaintiff's defense to protect his  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

184.    As a further proximate result of defendant's violation and breach of its general duties and obligations owed to plaintiff and the consequences proximately caused by the breach, as herein above alleged, plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

185.    As shown in the facts pleaded hereinabove, this defendant's conduct was intended to cause injury to plaintiff or was despicable conduct carried on by this defendant resulting in a cruel and unjust hardship in conscious disregard of plaintiff's rights, and was conducted with the intention to deprive plaintiff of property, legal rights, or otherwise cause injury, such as to constitute malice under California Civil Code §3294. Defendant ReconTrust's acts were done knowingly, willfully, and with malicious intent with a conscious reckless disregard of the rights of plaintiff conduct that subjected plaintiff to cruel and unjust hardship in conscious disregard of their rights, such that plaintiff is entitled to punitive damages appropriate to punish or set an example of this defendant in the amount of $850,000.00.

### FIFTEENTH  CLAIM FOR RELIEF
**(Fraud as to Defendant MERS and Defendant Recontrust)**

186.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 185 as though fully set forth herein.

187.    Plaintiff is informed and believes and thereon alleges that defendant MERS together with defendant Recontrust, with malicious intent to defraud and deceive plaintiff Zarate, caused and directed its agent and employee to falsely, fraudulently, and criminally forge and sign the name 'Stacey Kershberg' as the "Attorney in Fact" to the June 4, 2008, attempted Notice of Default.

188.    Plaintiff Zarate is informed and believes, and on such information and belief, alleges that the time of the forged signing of the attempted Notice of Default, defendant MERS and defendant Recontrust  knew that the person signing the Notice of Default was not Stacey Kershberg, and knew that that person  had no knowledge of contents Notice of Default

document.

189.    Plaintiff Zarate is informed and believes, and on such information and belief, alleges that at the time of the fraudulent signing of the attempted Trustee's Sale, defendant MERS and defendant Recontrust knew that but for this fraudulent and forged signing of the Notice of Default document, foreclosure proceedings would not be initiated.

190.    The action of causing an agent and employee to forge the Notice of Default was made with the intent defraud plaintiff Zarate, and was made for the purpose of inducing plaintiff Zarate and others to rely on the forged signature.

191.    At the time of the forgery as herein alleged, plaintiff Zarate was ignorant of the falsity of the signature and the failure of the purported Notice of Default. Plaintiff Zarate reasonably relied on the truthfulness of the signature and, as a result, was induced to not assert his legal rights and arguments in opposition to the attempted Notice of Default as a defense to the resulting initiation of the foreclosure sale proceedings.

192.    As a direct and proximate result of defendant's, fraud and deceit in causing and directing defendants' agent and employee to forge the attempted Notice of Default, as alleged herein, plaintiff Zarate has been required to incur damages including, but not limited to, attorneys' fees, costs, interest and other damages incurred in plaintiff Zarate's defense to protect their  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

193.    As a further proximate result of defendant's fraud and deceit in causing and directing defendants' agent and employee to forge the attempted Notice of Default, as alleged herein, plaintiff Zarate has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

194.    As shown in the facts pleaded herein above, defendant MERS and defendant Recontrust's fraud and deceit, was intended to cause injury to plaintiff Zarate or was despicable conduct carried on by defendant MERS and defendant ReconTrust resulting in cruel and unjust hardship in conscious disregard of plaintiff Zarate's rights, and was conducted with the intention to deprive plaintiff Zarate of property and legal rights or otherwise cause injury,

such as to constitute malice under California Civil Code Section 3294. The fraudulent acts described herein above were done knowingly, willfully, and with malicious intent, with a conscious disregard of the rights of plaintiff Zarate. It was conduct that subjected plaintiff to cruel and unjust hardship such, all of which entitle plaintiff to punitive damages in the sum of $850,000.00.

**SIXTEENTH CLAIM FOR RELIEF**
**(Fraud as to Defendant MERS and Defendant Mellon)**

195.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 194 as though fully set forth herein.

196.    Plaintiff Zarate is informed and believes and thereon alleges that defendant MERS and defendant Mellon, with malicious intent to defraud and deceive plaintiff Zarate, caused and directed its employee to falsely, fraudulently, and criminally forge and sign the name 'Kevin Rudolph' as the "Assistant Secretary" to the June 22, 2010, attempted Substitution of Trustee and Assignment of Deed of Trust  from defendant MERS substituting in defendant ReconTrust as Trustee and assigning all beneficial interests in the Deed of Trust to defendant Mellon.

197.    Plaintiff Zarate is informed and believes, and on such information and belief, alleges that at the time of the forged signing of the attempted substitution and assignment, MERS knew that the person signing the instrument was not Kevin Rudolph, and knew that that person  had no knowledge of contents of the substitution and assignment.

198.    Plaintiff Zarate is informed and believes, and on such information and belief, alleges that at the time of the fraudulent signing of the attempted substitution and assignment , defendant MERS and defendant Mellon knew that but for this fraudulent and forged signing of the substitution and assignment document, knew that but for this fraudulent and forged signing of the Notice of Default document, foreclosure proceedings would not be initiated.

199.    The action of causing an employee to forge the substitution and assignment  was made with the intent defraud plaintiff Zarate, and was made for the purpose of inducing plaintiff Zarate and others to rely on the forged signature.

200.    At the time of the forgery as herein alleged, Plaintiff Zarate was ignorant of the falsity of the signature and the failure of the purported substitution and assignment. Plaintiff Zarate reasonably relied on the truthfulness of the signature and, as a result, was induced to not assert his legal rights and arguments in opposition to the attempted substitution and assignment as a defense to the resulting foreclosure sale.

201.    As a direct and proximate result of defendant's, fraud and deceit in forging the attempted substitution and assignment, as alleged herein, plaintiff Zarate has incurred damages including, but not limited to, attorneys' fees, costs, interest and other damages incurred in plaintiff Zarate's defense to protect their ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

202.    As a further proximate result of defendant's fraud and deceit in forging the attempted substitution and assignment, as alleged herein, plaintiff Zarate has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

203.    As shown in the facts pleaded herein above, defendant MERS and defendant Mellon's fraud and deceit, was intended to cause injury to plaintiff Zarate or was despicable conduct carried on by defendant MERS and defendant Mellon resulting in cruel and unjust hardship in conscious disregard of plaintiff Zarate's rights, and was conducted with the intention to deprive plaintiff Zarate of property and legal rights or otherwise cause injury, such as to constitute malice under California Civil Code Section 3294. The fraudulent acts described herein above were done knowingly, willfully, and with malicious intent, with a conscious disregard of the rights of plaintiff Zarate. It was conduct that subjected plaintiff to cruel and unjust hardship such, all of which entitle plaintiff Zarate to punitive damages in the sum of $850,000.00.

### SEVENTEENTH CLAIM FOR RELIEF
### (Fraud as to Defendant MERS and Defendant ReconTrust )

204.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 203 as though fully

set forth herein.

205.    Plaintiff Zarate is informed and believes and thereon alleges that defendant MERS and defendant ReconsTrust , with malicious intent to defraud and deceive plaintiff Zarate, caused and directed its employees to falsely, fraudulently, and criminally forge and sign the Duplicated substitutions of trustee one with the name of name 'Elisavet Meza  as the "Assistant Secretary of MERS " on  June 03, of  2008, and a second one with the name "Angelica del Toro as the "Asistant Secretary of MERS " on June 09 2008 both attempted  and duplicated Substitutions of Trustee from defendant MERS substituting in defendant ReconTrust as Trustee in the Deed of Trust.

206.    Plaintiff Zarate is informed and believes, and on such information and belief, alleges that at the time of the forged signing of the Duplicate attempted substitutions MERS knew that the person signing each  instrument was not Elisavet Meza nor was  Angelica Del Toro , and knew that these people  had no knowledge of contents of the duplicate substitutions.

207.    Plaintiff Zarate is informed and believes, and on such information and belief, alleges that at the time of the fraudulent signing of the attempted substitution and assignment , defendant MERS and defendant Rrcontrust  knew that but for this fraudulent and forged signing of the duplicate substitutions, knew that but for this fraudulent and forged signing of the Substitutions of Trustee , foreclosure proceedings would not be initiated.

208.    The action of causing an employee to forge the substitution and assignment  was made with the intent defraud plaintiff Zarate, and was made for the purpose of inducing plaintiff Zarate and others to rely on the forged signature.

209.    At the time of the forgery as herein alleged, Plaintiff Zarate was ignorant of the falsity  of  the  signature  and  the  failure  of  the  purported  substitutions.  Plaintiff Zarate reasonably relied on the truthfulness of the signature and, as a result, was induced to not assert  his  legal  rights  and  arguments  in  opposition  to  the  attempted  substitution as a defense to the resulting  foreclosure sale.

210.    As a direct and proximate result of defendant's, fraud and deceit in forging the

attempted substitutions, as alleged herein, plaintiff Zarate has incurred damages including, but not limited to, attorneys' fees, costs, interest and other damages incurred in plaintiff Zarate's defense to protect their ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

211.   As a further proximate result of defendant's fraud and deceit in forging the attempted duplicated substitutions, as alleged herein, plaintiff Zarate has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

212.   As shown in the facts pleaded herein above, defendant MERS and defendant ReconTrust's fraud and deceit, was intended to cause injury to plaintiff Zarate or was despicable conduct carried on by defendant MERS and defendant ReconTrust resulting in cruel and unjust hardship in conscious disregard of plaintiff Zarate's rights, and was conducted with the intention to deprive plaintiff Zarate of property and legal rights or otherwise cause injury, such as to constitute malice under California Civil Code Section 3294. The fraudulent acts described herein above were done knowingly, willfully, and with malicious intent, with a conscious disregard of the rights of plaintiff Zarate. It was conduct that subjected plaintiff to cruel and unjust hardship such, all of which entitle plaintiff Zarate to punitive damages in the sum of $850,000.00.

### EIGHTEENTH CLAIM FOR RELIEF
### (Fraud as to Defendant ReconTrust and Defendant Mellon)

213.   Plaintiff Zarate incorporates by reference Paragraphs 1 through 212 as though fully set forth herein.

214.   Plaintiff Zarate is informed and believes and thereon alleges that defendant ReconTrust and and defendant Mellon, with malicious intent to defraud and deceive plaintiff Zarate, caused its employee to falsely, fraudulently, and criminally forge and sign the name 'Nallely Ochoa' as the "Authorized Signer" to the August 3, 2011, attempted Notice of Trustee's Sale.

215.    Plaintiff Zarate is informed and believes, and on such information and belief, alleges that at the time of the forged signing of the attemptedNotice of Trustee Sale, defendant Mellon and defendant ReconTrust knew that the person signing the instrument was not Nallely Ochoa, and knew that that person  had no knowledge of contents of the Notice of Trustee Sale.

216.    Plaintiff Zarate is informed and believes, and on such information and belief, alleges that at the time of the fraudulent signing of the attempted Notice of Trustee's Sale, defendant ReconTrust  and defendant Mellon knew that but for this fraudulent and forged signing of the substitution and assignment document, knew that but for this fraudulent and forged signing of the Notice of Default document, foreclosure proceedings would not be initiated.

217.    The action of causing an employee to forge the Notice of Trustee's Sale  was made with the intent defraud plaintiff Zarate, and was made for the purpose of inducing plaintiff Zarate and others to rely on the forged signature.

218.    At the time of the forgery as herein alleged, plaintiff Zarate was ignorant of the falsity of the signature and the failure of the purported substitution and assignment. Plaintiff Zarate reasonably relied on the truthfulness of the signature and, as a result, was induced to not assert his legal rights and arguments in opposition to the attempted substitution and assignment as a defense to the resulting  foreclosure sale.

219.    As a direct and proximate result of defendant's, fraud and deceit in forging the attempted Notice of Trustee's Sale, as alleged herein, plaintiff Zarate has incurred  damages including, but not limited to, attorneys' fees, costs, interest and other damages incurred in plaintiff Zarate's defense to protect their  ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

220.    As a further proximate result of defendant's fraud and deceit in forging the attempted Notice of Trustee's Sale, as alleged herein, plaintiff Zarate has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

221.    As shown in the facts pleaded herein above, defendant Mellon and defendant Recontrust's fraud and deceit, was intended to cause injury to plaintiff Zarate or was despicable conduct carried on by defendant Mellon and defendant ReconTrust resulting in cruel and unjust hardship in conscious disregard of plaintiff Zarate's rights, and was conducted with the intention to deprive plaintiff Zarate of property and legal rights or otherwise cause injury, such as to constitute malice under California Civil Code Section 3294. The fraudulent acts described herein above were done knowingly, willfully, and with malicious intent, with a conscious disregard of the rights of plaintiff Zarate. It was conduct that subjected plaintiff Zarate to cruel and unjust hardship such, all of which entitle plaintiff Zarate to punitive damages in the sum of $850,000.00.

### NINETEENTH CLAIM FOR RELIEF
#### (Slander of Title as to  Defendant MERS)

222.    Plaintiff  incorporates by reference Paragraphs 1 through 221 as though fully set forth herein.

223.    Defendant MERS, who, at all times herein, was defendant lender Countrywide's "nominee" and purported "beneficiary" under the February 2, 2006, Deed of Trust, without authority, legal right or standing executed the false documents:

1.    **Notice of Default**

    a.    Signed on June 3, 2008

    b.    Filed on June 4, 2008

    c.    No  CC § 2923.5 Declaration attached

**2.**    **Notices of Trustee's Sale**

    a.    Signed on September 8, 2008

    b.    Filed on September 16, 2008

**3.**    **Substitution of Trustee No**.1

    a.    Signed on June 3, 2008

    b.    Recorded on September 16, 2008

    c.    Substituted Defendant ReconTrust in place of Defendant CTC

**4.**    **Substitution of Trustee No**.2

    a.    Dated June 17 Signed on June 18, 2010

    b.    Recorded on June 22, 2010

    c.    Substituted Defendant ReconTrust in place of Defendant CTC

**5.**    **Assignment of Deed of Trust**

    a.    Dated June 17, and Signed on June 18, 2010

    b.    Recorded on June 22, 2010

    c.    Assigned it rights, if any it had, in Deed of trust to Defendant Mellon

224.    Assuming without admitting that MERS obtained the power and authority from the Deed of Trust to take the above actions, it is readily observed that:

    1.    There was no CC § 2923.5 declaration attached to the Notice of Default. (Note: Two CC § 2923.5 declarations were filed. The first notes that the date of notice was September 10, 2008 executed by Countrywide Home Loans. The second notes that the date of notice was March 12, 2010 by BAC Home loan Servicing, LP. Both of these notices were after the Notice of Default)

    2.    MERS made two Substitution of Trustees of the same party

    3.    The "assignment" to Defendant Mellon was null and void which further determines that Defendant Mellon's two Notices of Trustee sale, the first dated June 22, 2010, the second dated August 1, 2011, were also null and void and without legal effect.

225.    The filings of the above listed documents, and each of them, were wrongful and without privilege.

226 .    None of these Defendants, whether jointly or severally, is, or at any relevant time, was a trustee, beneficiary or assignee of any beneficiary of any Deed of Trust recorded against the Subject Property.    Accordingly, these defendants wrongfully caused the recording of the Assignment of the Deed of Trust, the Notice of Default, and the Substitution of Trustee,against the Subject Property.

227.    By doing the acts described above, Defendants slandered plaintiff' title to the Subject Property.

228.    In that the conduct and acts of Defendants violated, among others, California Civil Code section 2924(a)(1)(C), such conduct and acts were not privileged.  Plaintiff seeks a judicial declaration from this court .  it is necessary that this Court declare the actual rights and obligations of the parties, according to fairness and justice  and make a determination as to the validity, nature and extent that  defendants claimed purported assignment of Deed of Trust and foreclosure documents and procedures  have no legal effect against  Plaintiff and foreclosure documents and procedures are null and void..

229.    As a further proximate result of the wrongful conduct of defendants, and each of them, as herein alleged, plaintiff, and each of them have been required to incur damages including, but not limited to, diminution of the value of the Property, attorneys' fees, costs, interest and other damages incurred to protect plaintiff' ownership and possessory interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

230.    As a further proximate result of the wrongful conduct of defendants, and each of them, as herein alleged, plaintiff have suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

231.    As shown in the facts pleaded herein above, the acts of the defendants, and each of them, were intended to cause injury to plaintiff, and each of them, or were despicable conduct carried on by these defendants resulting in cruel and unjust hardship in conscious disregard of plaintiff' rights, and were conducted with the intention to deprive plaintiff of property and legal rights or otherwise cause injury, such as to constitute malice under California Civil Code Section 3294. The fraudulent acts described herein above were done knowingly, willfully, and with malicious intent, with a conscious disregard of the rights of plaintiff. It was conduct that subjected plaintiff to cruel and unjust hardship, all of which entitle plaintiff, and each of

them, to punitive damages in the sum of $850,000.00.

## TWENTIETH CLAIM FOR RELIEF
### (Slander of Title as to  Defendant Countrywide and Defendant MERS)

232.    Plaintiff  incorporates by reference Paragraphs 1 through 231 as though fully set forth herein.

233.    In the February 2, 2006, Deed of Trust, defendant MERS was wrongfully named as "nominee" and purported "beneficiary" by defendant lender Countrywide who retained legal ownership and possession of the Promissory Note. It has long been held that the Deed of Trust has no legal effect separate and apart and is subservient to the Promissory Note. As the Promissory Note goes, so goes the Deed of Trust (no splitting is allowed by property law).  By attempting to legally and  physically separate the documents, these defendants, and each of them, have attempted to re-write property law to meet their financial needs and such attempt is wrongful rendering the Deed of Trust Null and Void.

234.    The filing of the Deed of Trust with the County Recorder's office was  wrongful and without privilege.

235.    By doing the acts described above, defendants slandered plaintiff's title to the Subject Property.

236.    In that the conduct and acts of Defendants violated, among others, California Civil Code section 2924(a)(1)(C), such conduct and acts were not privileged. . Plaintiff seeks a judicial declaration from this court . it is necessary that this Court declare the actual rights and obligations of the parties, according to fairness and justice,  and make a determination as to the validity, nature and extent that  defendants separation of the Note and the  Deed of Trust and procedures  have no legal effect against  Plaintiff  and instruments of the debt  are null and void without legal effect.

237.    As a further proximate result of the wrongful conduct of defendants, and each of them, as herein alleged, plaintiff has been required to incur damages including, but not limited to, diminution of the value of the Property, attorneys' fees, costs, interest and other damages

-60-

incurred to protect plaintiff's ownership and possessory  interests in the Property against the unlawful foreclosure activities of defendants, and each of them, in the amount of $180,000.00.

238.     As a further proximate result of the wrongful conduct of defendants, and each of them, as herein alleged, plaintiff  has suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body in the sum of $760,000.00.

239.     As shown in the facts pleaded herein above, the acts of the defendants, and each of them,  were  intended  to  cause  injury  to  plaintiff  or  were  despicable  conduct carried on by these defendants resulting in cruel and unjust hardship in conscious disregard of plaintiff' rights, and were conducted with the intention to deprive plaintiff of property and legal rights or otherwise cause injury, such as to constitute malice under California Civil Code Section 3294. The fraudulent acts described herein above were done knowingly, willfully, and with malicious intent, with a conscious disregard of the rights of plaintiff. It was conduct that subjected plaintiff to cruel and unjust hardship, all of which entitle plaintiff to punitive damages in the sum of $850,000.00.

## TWENTY-FIRST  CLAIM FOR RELIEF
### [Declaratory Relief to Determine an Interest in Property]
### [F.R.B.P. Sections 7001(1),  7001(2), 7001(7), and 7001(9) ]

240.     Plaintiff  incorporates by reference Paragraphs 1 through 239 as though fully set forth herein.

241.     Plaintiff alleges that he holds an interest in the Property free and clear of any interest of defendants, and each of them,  in that the lien, as evidenced by the Deed of Trust, is null and void because no named defendant is a party in interest with standing to initiate foreclosure proceedings. As such, all consequential acts in furtherance of a non-judicial foreclosure sale  must be declared null and void.

242.     Plaintiff is informed and believe  that defendants allege that the Deed of Trust is fully enforceable and cannot be declared null and void, because its provisions allegedly secure payment of the loan used to purchase the Property, and upon information and belief,

plaintiff alleges that defendants dispute the contentions alleged herein by the plaintiff.

243.    An actual controversy exists between plaintiff and defendants with regard to the validity, nature and extent of their interests in the Property.

244.    It is necessary that this Court declare the actual rights and obligations of the parties according to fairness, justice and law,  and make a determination as to the validity, nature and extent of defendants' interest in the Property.

245 . Tender requirement should not be applied in Plaintiff's case because Plaintiff alleges fraud in the origination of the loan in his complaint, any tender requirement would be inequitable for the Plaintiff.  Additionally, Plaintiff is demanding $1,790,000.00 in his complaint the potential damages in this case exceeds the amount of the tender requirement. Plaintiff is now indigent mainly because of the actions of Defendants it would be unjust to require Plaintiff to tender.  Plaintiff alleges under information and believe that Defendants have already factored in and  adjusted for losses and cost to defend future claims in the transaction by acquisition, merging, successor in interest  or   assigning of Plaintiff's loan, and aditionally by receiving government bailouts.  To require plaintiff to tender in order to defend his property would be unjust and inequitable considering the fact that defendant banks are to blame for inflated property values which have dropped 50% to 75% since it's peak.  Plaintiff request  that the Court declare that tender is not required in Plaintiff's situation.

### TWENTY-SECOND  CLAIM FOR RELIEF
### (Violation of 12 USC 2607(a) Defendant Countrywide
### Bank and Defendant American Mutual)

246.    Plaintiff Zarate incorporates by reference Paragraphs 1 through 245, as though fully set forth herein.

247.   12 USC 2607(a) places a ban on parties from giving or receiving a kickback or other thing of value incident to a federally related mortgage referral. It states:

> No person shall give and no person shall accept any
> fee, kickback, or thing of value pursuant to any
> agreement or understanding, oral or otherwise, that

business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.(12 USC 2607(a))

248.    The loan at issue herein is a federally related mortgage in that at the time the loan was issued, defendant Countrywide Bank was a banking institution regulated by the federal government.

249.    Defendant Countrywide Bank separately paid a 'yield spread premium' kickback fee of $17,850.00 to American Mutual as a reward fee for 'steering' the plaintiff into a more expensive loan, a loan with terms that more favored the lender's interests rather than the borrower's interests. This payment and the receipt of this payment was in direct violation 12 USC 2607(a).

250.    In doing the act(s) as herein described, the defendants herein, and each of them, are jointly and severally liable to the plaintiff Zarate for statutory damages pursuant to 12 USC 2607(d)(2) in an amount $53,550.00.

251.    As a further result of the breach of defendant American Mutual's breach of the fiduciary duties owed to plaintiff Zarate, this plaintiff has incurred actual damages in the form including, but not limited to, diminution in value of the Property, costs associated with the foreclosure proceedings, and attorney's fees and other costs in the sum of $180,000.00.

**TWENTY-THIRD CLAIM FOR RELIEF**
**[Quiet Title as to all Defendant and All Persons Unknown, Claiming**
**any Equitable Right, Title, Estate, Lien or Interest in the Property,**
**Described Herein, Adverse to Plaintiff's Title,  or any Cloud on**
**Plaintiff's Title thereto, and DOES 1 through 20]**

252.    Plaintiff incorporates by reference Paragraphs 1 through 251 as though fully set forth herein.

253.    Plaintiff is, and, at all times herein mentioned, was, the owners and/or entitled to possession of the property located at 10826 Walmort Road, City of Wilton, County of Sacramento, California, is more particularly described as:

All that certain real property situate in the Unincorporated Area County of Sacramento, State of California, described as follows:

All that portion of Tract No. 91, as described in the partition of the Mokelumnes Rancho in the District Court of the sixth Judicial District of the State of California, in and for the County of  Sacramento, entitled "John F. McCauley, plaintiff, vs. Oved Harvey, et al, defendants", described as follows:

The North 20.00 feet acres of the West 50.00 acres of the East 80.00 acres of the Northeast one-quarter of Section 14. Township 6 North, Range 6 East. M.D.B. & M.

APN No. 134-0240-001-0000

254.    Plaintiff Zarate obtained full ownership of the Property in fee when he originally purchased the Property by way of grant deed and later refinanced as herein alleged . Plaintiff's ownership interests are in fee and is superior to all other "interested parties" in the Property with the exception of the owner, possessor,  and holder of the Promissory Note secured by the Deed of Trust. Plaintiff is informed and believes that said Promissory Note no longer exists. And because Lender originally separated  the instruments with the intention to defraud plaintiff, the debt is declare Null and Void.

255.    Plaintiff  seeks  to  quiet  title  against  the  claims  of defendants, and each of them herein, and  ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1 through 20 (collectively referred to herein as the "Title Defendants") as the Title Defendants hold themselves out in maintaining the authority and right to foreclose on the Property offering  fee simple ownership of the subject Property by and through the foreclosure and  purchase of the property at the trustee's sale.  In fact, the Title Defendants had no right to title or interest in the subject Property and no right to entertain any rights of ownership including the right to foreclosure, offering the subject Property for sale at a

trustee's sale, and/or demanding possession or filing for unlawful detainer or filling a Proof of Claim in Bankruptcy court . Nevertheless, illegally and with unclean hands, the Title Defendants proceeded with initiating a non-judicial foreclosure sale by filing and serving the Notice of Default.

256. On February14, 2006, the closing date of the issuance of the refinance loan, plaintiff Zarate executed the Deed of Trust which gave to the beneficiary the power of sale if the monthly installment payments were not paid by him. This plaintiff executed the Promissory Note and Deed of Trust as a result of fraudulent actions by the mortgage broker and lender, defendant American Mutual and defendant Countrywide Bank, when American Mutual's representative falsely and secretly inflated the plaintiff's income to qualify him for the refinance loan, and then fraudulently stated to the plaintiff Zarate that he could afford the loan and that his income qualified him for the loan. Plaintiff is informed and believe that, later, defendant MERS, as the purported 'nominee' beneficiary caused the substituted trustee, defendant ReconTrust, to initiate foreclosure on the Property without right or authority of the owner or possessor of the Promissory Note.

257. Additionally, Plaintiff is informed and believes that at no time relevant to this complaint were defendant MERS or defendant Mellon parties in interest with standing to initiate and conduct foreclosure proceeding against the Property herein.

258. Plaintiff seeks to quiet title as of February 14, 2006, and seeks a judicial declaration from this court according to fairness justice, that the title to the subject Property is vested in plaintiff alone and that defendants Mellon and MERS, and the Title Defendants, and each of them be declared to have no interest estate, right, title or interest in the subject property and that the these defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the subject Property subject to plaintiff's rights.

259 . Tender requirement should not be applied in Plaintiff's case because Plaintiff alleges fraud in the origination of the loan in his complaint, any tender requirement would be inequitable

for the Plaintiff.  Additionally, Plaintiff is demanding $1,790,000.00 in his complaint the potential damages in this case exceeds the amount of the tender requirement.  Plaintiff is now indigent mainly because of the actions of Defendants it would be unjust to require Plaintiff to tender.  Plaintiff alleges under information and believe that Defendants have already factored in and  adjusted for losses and cost to defend future claims in the transaction by acquisition, merging, successor in interest  or  assigning of Plaintiff's loan, and aditionally by receiving government bailouts.  To require plaintiff to tender in order to defend his property would be unjust and inequitable considering the fact that defendant banks are to blame for inflated property values which have dropped 50% to 75% since it's peak.  Plaintiff request  that the Court declare that tender is not required in Plaintiff's situation.

**WHEREFORE, plaintiff prays judgment as follows**:

1.    That judgment be entered for plaintiff and against defendants, and each of them;

2.    For Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction preventing defendants, or anyone acting in concert with them, from (i) conducting a foreclosure sale during the pendency of this action  (ii) attempting  to encumber, selling or otherwise transferring title, possession, or ownership of  the Property or (3) encumbering, selling, or otherwise transferring  title, possession, or ownership of the Property whatsoever;

3.    For an Order from the Court declaring that the Deed of Trust, Notice of Default, and Notice of Trustee's Sale,  are declared null and void;

4.    For statutory damages in the sum of $53,550.00; (not counted ask lar)

5.    For compensatory damages in the sum of $180,000.00;

6.    For consequential damages, according to proof at trial;

7.    For general damages for all injuries resulting from the fraud, breaches of fiduciary duties, and conspiracy, in the sum of $760,000.00;

8.    For punitive and/or exemplary damages  against defendants in an amount

sufficient to punish defendants and each of them, as a result of their unlawful acts and practices in the sum of $850,000.00;

9.    For disgorgement and restitution for all earnings, profits, compensation, and benefit received by defendants, and each of them, as a result of their unlawful acts and practices;

10.    For an order compelling said defendants, and each of them, to transfer legal title and possession of the subject property to plaintiff herein;

11.    For a declaration and order determinating that title be quieted in plaintiff, and each of them, as the rightful owners in fee of the property and that all persons and all defendants herein, and each of them, be declared to have no estate, right, title or interest in said property;

12.    For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

13.    For pre-judgment interest;

14.    For costs and disbursements of the action; and

15.    For such other and further relief as the Court mad deem just and proper.

Dated:    June 22, 2012.

/s/Anh V. Nguyen
**Anh V. Nguyen**
Attorney for Plaintiff/Debtor
J. Pedro Zarate

## VERIFICATION

I, J. Pedro Zarate, am the plaintiff in the above-entitled action. I have read the foregoing complaint and know its contents. The same is true of my own knowledge, except as to those matters that are alleged in the complaint on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: _June 22,_ , 2012.


_____
J. Pedro Zarate, Plaintiff/Debtor

-68-